# COURT OF APPEALS
# DECISION
# DATED AND FILED

## July 29, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP2164**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022CV1656

**IN COURT OF APPEALS
DISTRICT II**

ROBERT PELLEGRINI,

    PLAINTIFF-RESPONDENT,

V.

WISCONSIN ELECTIONS COMMISSION,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waukesha County: MICHAEL P. MAXWELL, Judge. *Reversed and cause remanded with directions.*

Before Neubauer, P.J., Gundrum, and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The Wisconsin Elections Commission ("WEC" or "Commission") appeals from the judgment entered following the circuit court's

grant of summary judgment in favor of Robert Pellegrini invalidating an order permitting WEC's delegation of decision-making authority to its administrator for the purpose of resolving some WIS. STAT. § 5.06 (2023-24)[1] complaints and from the denial of its own motion for summary judgment. WEC also challenges the court's prior order concluding Pellegrini had standing to pursue his claims.

¶2 We conclude the circuit court erred when it determined Pellegrini has standing to pursue this challenge to WEC's decision-making process. He has not alleged injury in fact to himself. Pellegrini contends he has standing because of the *threat* of injury. However, WIS. STAT. § 227.40(1) requires that Pellegrini establish a threat of injury to *his* legal rights or privileges. ***Brown v. WEC***, 2025 WI 5, 414 Wis. 2d 601, 16 N.W.3d 619, further affirms that Pellegrini must allege that *he* faces a threat of a direct injury in fact. Because Pellegrini has failed to make this showing, we reverse and remand. The complaint must be dismissed.

## I. BACKGROUND

¶3 WEC issued an order that delegates specific authority to the administrator regarding the handling of elector complaints filed under WIS. STAT. § 5.06, and allows the administrator, in some circumstances, to issue a decision that may be final, subject to passive review by the commissioners (Delegation Order). In November 2022, Pellegrini initiated this declaratory judgment action pursuant to WIS. STAT. §§ 227.40 and 806.04,[2] challenging both the validity of the Delegation Order and the validity of certain administrative rules Pellegrini alleges WEC relied

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[2] Pellegrini filed the initial Summons and Complaint on November 17, 2022, followed by an Amended Summons and Complaint on November 28, 2022. All subsequent references to the complaint refer to the Amended Summons and Complaint.

upon in authorizing the Delegation Order, WIS. ADMIN. CODE § EL 20.04(6) and 20.04(10) (through June 2026).[3]  Alternatively, Pellegrini asserted that the Delegation Order is an invalid and unlawful rule that WEC failed to promulgate in compliance with WIS. STAT. ch. 227.[4]

¶4      In response to Pellegrini's complaint, WEC filed a motion to dismiss on the ground that Pellegrini lacked standing to challenge the Delegation Order because there was no "live" WIS. STAT. § 5.06 complaint.  WEC asserted Pellegrini could only challenge the Delegation Order (or the statutes and administrative code provisions he alleged WEC relied upon in passing the Delegation Order) within the context of an active WIS. STAT. § 5.06 complaint.  Because Pellegrini had no such active complaint pending, it said, "resolution of his current challenge to the delegation policy would be purely academic and would have no practical effect on any underlying controversy[,]" thus rendering any opinion issued advisory in nature. WEC also asserted Pellegrini lacked elector or taxpayer standing under WIS. STAT. § 227.40(1) to challenge its procedural policy "in the abstract and independent of any injury in fact."

---

[3]  Pellegrini challenges only Part 1.a.ii-iv of the Delegation Order, and our references to the Delegation Order throughout pertain specifically to those challenged provisions.  We also use WEC's "decision-making process" or "delegation" to refer to the challenged policy set forth in the WEC's Delegation Order and portions of WIS. ADMIN. CODE § EL 20.04(6) and (10).  All references to WIS. ADMIN. CODE § EL are to the June 2026 Register.

[4]  As relevant here, Pellegrini alleges in his complaint: (1) he "has a legal right for WEC to abide by the statutory process to resolve complaints"; (2) "The [administrative rules] interfered with and impaired and impairs [his] legal rights and privileges"; (3) he "is entitled to a declaration that the [Delegation Order] is invalid and unenforceable"; and (4) "the Delegation Order interferes with [his] right to file a [future] complaint under [WIS. STAT.] § 5.06 and to have that complaint decided by the WEC Commissioners and not by the Administrator or any person other than the WEC Commissioners."  In his "Request for Relief[,]" he seeks "[a]n injunction requiring WEC to decide *future* § 5.06 complaints by voting on the decision before it is issued[.]"  (Emphasis added.)

¶5 Pellegrini argued he had standing as an elector because he had alleged a threatened injury—application of the challenged Delegation Order's procedures to a future WIS. STAT. § 5.06 claim—and because he had a legally protected interest in having WEC's commissioners resolve § 5.06 voter complaints in compliance with the law. Pellegrini also argued that a prior § 5.06 complaint that he had filed and which had been decided by the WEC administrator supported his standing arguments.

¶6 The circuit court concluded Pellegrini had standing to pursue the declaratory judgment action and denied WEC's motion to dismiss. In doing so, the court relied on the lead and concurring opinions in ***Teigen v. WEC***, 2022 WI 64, 403 Wis. 2d 607, 976 N.W.2d 519 (plurality opinion), *overruled in part by* ***Priorities USA v. WEC***, 2024 WI 32, 412 Wis. 2d 594, 8 N.W.3d 429, concluding that "Wisconsin law grants a statutory right to [elector] standing under WIS. STAT. § 5.06." It further explained that despite its "murkiness[,]" "***Teigen*** is not wholly dissimilar to here as Pellegrini is putting forth allegations that reasonably infer an interference with his right to vote."

¶7 The circuit court subsequently addressed the merits of Pellegrini's challenge presented in cross-motions for summary judgment, and granted Pellegrini's motion and denied WEC's motion. The court invalidated the Delegation Order, and declared that WIS. ADMIN. CODE § EL 20.04(6) and (10) were invalid and unenforceable to the extent they were inconsistent with the court's decision; and issued an injunction ordering WEC to resolve future § 5.06 complaints in accordance "with the statute by a vote of the commission."

¶8 WEC appeals.

## II.  STANDARD OF REVIEW

¶9      The dispositive issue on appeal is whether the circuit court erred when it denied WEC's motion to dismiss based on standing.  In reviewing a motion to dismiss, "we accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom."  ***Data Key Partners v. Permira Advisers LLC***, 2014 WI 86, ¶¶18-19, 356 Wis. 2d 665, 849 N.W.2d 693; *see also* ***Friends of the Black River Forest v. Kohler Co.***, 2022 WI 52, ¶¶10-11, 402 Wis. 2d 587, 977 N.W.2d 342. "Whether a complaint states a claim upon which relief can be granted is a question of law." ***Data Key Partners***, 356 Wis. 2d 665, ¶17.  Likewise, "[w]hether a party has standing is [also] a question of law that we review independently."  ***City of Mayville v. DOA***, 2021 WI 57, ¶15, 397 Wis. 2d 496, 960 N.W.2d 416 (citation omitted).

## III.  DISCUSSION

*A. Pellegrini Must Show an Actual Injury or Threatened Injury to Himself.*

¶10     Under WIS. STAT. § 227.40(1): "The court shall render a declaratory judgment in the action *only* when it appears from the complaint and the supporting evidence that the rule or guidance document or its threatened application interferes with or impairs, or threatens to interfere with or impair, *the legal rights and privileges of the plaintiff*." (Emphases added).

¶11     The Wisconsin Supreme Court has established a two-part analysis for determining whether parties seeking to challenge an administrative rule, guidance document, or their application have standing.  ***Fox v. DHSS***, 112 Wis. 2d 514, 524, 334 N.W.2d 532 (1983) (citation omitted).  The first step, which is dispositive here, requires the plaintiff to show that the challenged action of the agency directly causes

or threatens to cause injury to the interest of the plaintiff—injury in fact. *Id.*; *see also* **Brown**, 414 Wis. 2d 601, ¶14.

¶12     Injury in fact requires that a litigant must have "a personal stake in the outcome of the controversy[,]" which "requires a 'distinct and palpable injury' to the [litigant], and also a 'fairly traceable' causal connection between the claimed injury and the challenged conduct." **Kiser v. Jungbacker**, 2008 WI App 88, ¶12, 312 Wis. 2d 621, 754 N.W.2d 180 (citation omitted); *see also* ***id.***, ¶20 (challenged action must "bear[] 'directly and injuriously' upon [appellant's] interests" (citation omitted)).

¶13     After the circuit court decision and the appellate briefs were filed in this case, the supreme court directly addressed the standing of individual electors to challenge an administrative decision by WEC when considering WIS. STAT. § 5.06 elector complaints. *See* **Brown**, 414 Wis. 2d 601. Brown filed a § 5.06(1)[5] complaint regarding various in-person absentee voting procedures implemented by the Racine City Clerk, and then sought judicial review pursuant to § 5.06(8)[6] of a WEC order under § 5.06(6) denying his complaint. **Brown**, 414 Wis. 2d 601, ¶¶2-3. The supreme court held that Brown lacked standing because he had not shown he had suffered a personal injury—injury in fact. ***Id.***, ¶¶1, 4, 16.

¶14     The supreme court held that Brown had not been "aggrieved" by the order issued by WEC, a requirement of the appeal statute, WIS. STAT. § 5.06(8).

---

[5] WISCONSIN STAT. § 5.06(1) allows "any elector" served by a local election official to bring a complaint to WEC about the election official's conduct if the elector believes the conduct violates the law.

[6] WISCONSIN STAT. § 5.06(8) provides in relevant part: "[a]ny election official or complainant who is aggrieved by an order issued under [§ 5.06(6)] may appeal the decision of the commission to circuit court[.]"

***Brown***, 414 Wis. 2d 601, ¶¶1, 4, 16.  It was not enough that Brown received an adverse decision from WEC.  ***Id.***, ¶¶18-24.  He "did not suffer an injury to a legally recognized interest as a result of WEC's decision." ***Id.***, ¶16; *see also **id.***, ¶4.  Brown did not allege that the challenged election activity in Racine "made it more difficult for him to vote or affected him personally in any manner." ***Id.***, ¶16.

¶15     The ***Brown*** court emphasized that the bar for demonstrating injury "is low—even an injury to a 'trifling interest' may be sufficient to confer standing." ***Id.***, ¶17 (citing ***Milwaukee Brewers Baseball Club v. DHSS***, 130 Wis. 2d 56, 65, 387 N.W.2d 245 (1986) (quoting ***Fox***, 112 Wis. 2d at 524)).  Nevertheless, it is not the "magnitude" of the injury that is determinative of standing—rather, the *fact* of injury must be shown, which Brown failed to do.  ***Brown***, 414 Wis. 2d 601, ¶¶17, 25 (citation omitted); *see also **Fox***, 112 Wis. 2d at 525.

¶16     ***Brown*** makes clear that the first step of the two-prong standing analysis—determining whether the party establishes an actual or threatened injury in fact—is the same under WIS. STAT. § 5.06(8) and under WIS. STAT. § 227.40(1).  *See **Brown***, 414 Wis. 2d 601, ¶14; *see also **Friends of the Black River Forest***, 402

Wis. 2d 587, ¶¶18, 30-31.[7]  The supreme court held that "aggrieved" in WIS. STAT. § 5.06(8) "is to be interpreted consistently across [standing] statutes[.]" ***Brown***, 414 Wis. 2d 601, ¶¶13, 15.  Both statutory standing provisions require a demonstration by a plaintiff that he or she has been injured in fact by the challenged agency rule or decision.  The standing requirement of injury in fact under both statutes is materially indistinguishable.

*B. Pellegrini Has Not Alleged an Actual Injury or Threatened Injury to Himself.*

¶17     Pellegrini has not alleged an actual injury to himself—interference or impairment of his legal rights and privileges that can be remedied in this case.  He has failed to establish that the challenged decision-making policy—permitting delegation of a decision to the WEC administrator when resolving WIS. STAT. § 5.06 complaints—has "personally affected him." *See **Brown***, 414 Wis. 2d 601, ¶16.  He has not filed an elector challenge, and there is no WEC order issued under § 5.06(6),

---

[7] In the context of petitions for judicial review of administrative decisions under WIS. STAT. ch. 227, the standing inquiry begins with two controlling statutes: WIS. STAT. §§ 227.52 and 227.53.  *See **Friends of the Black River Forest v. Kohler Co.***, 2022 WI 52, ¶20, 402 Wis. 2d 587, 977 N.W.2d 342.  Section 227.52 provides for judicial review of "[a]dministrative decisions which adversely affect the substantial interests of any person, whether by action or inaction, whether affirmative or negative in form[.]"  Section 227.53(1) provides the procedures for judicial review for "any person aggrieved by a decision specified in [§] 227.52 ... subject to [certain] procedural requirements[.]"  A "[p]erson aggrieved" is defined as one "whose substantial interests are adversely affected by a determination of an agency."  WIS. STAT. § 227.01(9).  Taken together, sections 227.52 and 227.53 require a petitioner to "show a direct effect on his legally protected interests" to establish standing to bring a petition for judicial review.  ***Friends of the Black River Forest***, 402 Wis. 2d 587, ¶20 (citing ***Fox v. DHSS***, 112 Wis. 2d 514, 524, 334 N.W.2d 532 (1983)).  These two elements—direct injury and legally protected interest—represent the two prongs of the standing inquiry under WIS. STAT. § 227.40.  *See **Friends of the Black River Forest***, 402 Wis. 2d 587, ¶31; *see also **Brown v. WEC***, 2025 WI 5, ¶21, 414 Wis. 2d 601, 16 N.W.3d 619 (citing ***Friends of the Black River Forest***, 402 Wis. 2d 587, ¶26 (explaining that when "person aggrieved" lacked a statutory definition in ch. 227, the court had required an injury to a legally recognized interest); *see also **Teigen v. WEC***, 2022 WI 64, ¶19, 403 Wis. 2d 607, 976 N.W.2d 519 (plurality opinion), *overruled in part by **Priorities USA v. WEC***, 2024 WI 32, 412 Wis. 2d 594, 8 N.W.3d 429 (explaining that this two-prong test applies broadly "to challenge an agency action under chapter 227 of the Wisconsin statutes.").

much less one that the administrator decided adversely to Pellegrini pursuant to WEC delegation.

¶18    Nor has Pellegrini alleged the *threat* of an imminent personal injury or that he will be directly affected by WEC's decision-making process when resolving WIS. STAT. § 5.06 elector complaints. Although Pellegrini does not allege or contend in this years-old litigation (filed in 2022) that he will do so, he suggests that he could some day file a § 5.06 elector complaint. Any threat of injury is purely conjectural.

¶19    Abstract, hypothetical, and conjectural injury "is not enough." *Fox*, 112 Wis. 2d at 525 (citing *City of L.A. v. Lyons*, 461 U.S. 95, 101 (1983)); *see also Friends of the Black River Forest*, 402 Wis. 2d 587, ¶21 (standing may not be based on alleged injuries that are merely "hypothetical" or "conjectural"); *Miller Brands-Milwaukee, Inc. v. Case*, 162 Wis. 2d 684, 695, 470 N.W.2d 290 (1991) ("We agree that the case was not ripe for adjudication on the hypothetical 'facts' on which Miller based its action."). A plaintiff must show that he "'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct[.]" *Fox*, 112 Wis. 2d at 525 (quoting *Lyons*, 461 U.S. at 102). The event or act threatening to cause harm to the plaintiff's legal rights must be "imminen[t,]" a "practical certainty[,]" and not, "remote, contingent, and uncertain[.]" *Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship*, 2002 WI 108, ¶46, 255 Wis. 2d 447, 649 N.W.2d 626 (citation omitted).

¶20    Pellegrini's entire factual analysis of the first step (injury in fact) of the standing inquiry rests on *one contention*—that he has asserted a right to have a future WIS. STAT. § 5.06 complaint he might some day file receive statutorily lawful

review by WEC.[8]  Pellegrini identifies nothing to suggest he is "immediately in danger" of interference or impairment of *his legal rights*.  *See Fox*, 112 Wis. 2d at 525 (citation omitted).

¶21     In regard to his legal analysis, Pellegrini largely relies on a general discussion about ripeness supporting a *class action* filed by Time Warner customers seeking a declaratory judgment under WIS. STAT. § 806.04, the Uniform Declaratory Judgments Act (UDJA), in *Putnam*, 255 Wis. 2d 447, ¶¶43-44. *Putnam* directly refutes Pellegrini's arguments.

¶22     In *Putnam*, there was a justiciable controversy because the alleged future harm—the "imposition of a $5.00 fee for late payment"—was "an imminent and practical certainty" for *members of the class*.  *Id.*, ¶46.  The plaintiffs alleged that, on average, 10 to 15 percent of Time Warner's customers paid the late fee each month.  *Id.*  A plaintiff must show that he or she "*will* sustain[] some pecuniary loss or otherwise *will* sustain a substantial injury to his or her interests."  *Lake Country Racquet & Athletic Club, Inc. v. Village of Hartland*, 2002 WI App 301, ¶17, 259 Wis. 2d 107, 655 N.W.2d 189 (emphases added).  The claims of the class members in *Putnam*, which were "real, precise, and immediate[,]" and not "hypothetical, abstract, or remote[,]" stand in stark contrast to that of Pellegrini.  255 Wis. 2d 447, ¶47.

¶23     Pellegrini and the dissent also recite general phrases from other UDJA cases to advocate for Pellegrini's request for an advisory opinion, when the cases directly refute his position.  As with *Putnam*, these cases affirm that the facts

---

[8] In effect, Pellegrini's sole contention acknowledges that the *only avenue* to establish a threat of injury would be if he himself were threatened with an adverse WEC order involving administrator delegation.

regarding the plaintiff's actual or threatened injury *to his or her legal* interests must be sufficiently real, precise and immediate.

¶24 For example, the dissent cites *Olson v. Town of Cottage Grove*, 2008 WI 51, 309 Wis. 2d 365, 749 N.W.2d 211 (and the cases cited therein), for the general idea that declaratory relief is appropriate wherever it will serve a "useful purpose." Dissent, ¶121 n.34. As in *Putnam*, the *Olson* court addressed ripeness under the UDJA—and it was undisputed that the parties were adverse and the plaintiff had a legally protectable interest. *Id.*, ¶21. The *Olson* court held that, while courts may anticipate and resolve threatened disputes, there must be an "identifiable, certain dispute[] between the adverse parties." *Id.*, ¶28 (citing *Putnam*, 255 Wis. 2d 447, ¶43).

¶25 In *Olson*, the property owner's claim was justiciable because the government entity charged with implementing the disputed zoning ordinance had reached a final decision regarding application of the ordinance to the plaintiff's property. *Olson*, 309 Wis. 2d 365, ¶¶63-64. The property owner faced financial loss due to the challenged zoning restriction. *Id.*, ¶¶6-5, 42. The application of the ordinance to the property owner's land was not contingent or uncertain. The *Olson* court noted that this "differs" from the interest of other landowners in the town who had "not yet put the wheels in motion" to secure approvals from the government. *Id.*, ¶64.

¶26 Pellegrini's and the dissent's other cited cases (Dissent, ¶121 n.34) are equally unavailing as they too support WEC's position. In *Milwaukee District Council 48 v. Milwaukee County*, 2001 WI 65, ¶¶38-39, 244 Wis. 2d 333, 627 N.W.2d 866, the court held that the case was justiciable because the union member had a personal interest in his own pension. Directly applicable here, in *Lister v.*

***Board of Regents of the University Wisconsin System***, 72 Wis. 2d 282, 308, 240 N.W.2d 610 (1976), the court held that "[i]t is not a sufficient ground for declaratory relief that the parties have a difference of opinion as to the proper construction and application of a particular statute."

¶27　Thus, ***Olson*** and the cases that court, Pellegrini, and the dissent cite affirm that the *facts regarding the plaintiff's actual or threatened injury to his or her legal interests* must be sufficiently concrete. These cases directly reject the dissent's suggestion that a plaintiff need only show that a requested advisory opinion on a statutory interpretation issue is sufficiently concrete.[9]

¶28　In sum, as in ***Brown***, Pellegrini has not alleged that the challenged WEC decision-making has affected—or is even likely to affect—him personally in any manner. While WIS. STAT. § 227.40(1) provides that *threatened* interference or impairment of one's legal rights could be enough (as does the supreme court in ***Brown***, 414 Wis. 2d 601, ¶25), as discussed above, Pellegrini's challenge fails to identify any imminent threat to his legal rights. Pellegrini lacks standing because he has not alleged that WEC's decision-making process threatens to cause him to "personally suffer[] … an injury[,]" or "injure[] him personally in any way[.]" ***Brown***, 414 Wis. 2d 601, ¶¶16-17. His challenge to WEC's decision-making

---

[9] Pellegrini's and the dissent's reliance on ***Putnam v. Time Warner Cable of Southeastern Wisconsin, Ltd. Partnership***, 2002 WI 108, 255 Wis. 2d 447, 649 N.W.2d 626, and these other cases also fails to address the statutory personal interest requirement *explicitly* set forth in WIS. STAT. § 227.40(1), as well as the legion of cases requiring that, under the Uniform Declaratory Judgments Act (UDJA), the standing analysis requires actual or threatened injury in fact *to the plaintiff*. "Plaintiffs need to demonstrate they actually 'have a personal stake in the outcome and [are] directly affected by the issue [] in controversy.'" ***Planned Parenthood of Wis., Inc. v. Schimel***, 2016 WI App 19, ¶19, 367 Wis. 2d 712, 877 N.W.2d 604 (alterations in original; citation omitted); *see, e.g.*, ***City of Madison v. Town of Fitchburg***, 112 Wis. 2d 224, 228, 332 N.W.2d 782 (1983) (UDJA standing requires "a personal stake in the outcome[.]"); ***Village of Slinger v. City of Hartford***, 2002 WI App 187, ¶9, 256 Wis. 2d 859, 650 N.W.2d 81 (UDJA standing requires "a personal stake in the outcome" that is "directly affected by the issues in controversy[.]").

process to decide WIS. STAT. § 5.06 complaints is a generalized challenge that fails to identify a threatened immediate and concrete personal injury in fact to him. Pellegrini's generalized grievance is indistinguishable from that of any other elector who disagrees with the delegation policy.

¶29    Mere disagreement or frustration with the defendant's conduct is insufficient to support standing.  *See **Hollingsworth v. Perry***, 570 U.S. 693, 704 (2013) ("The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet [standing] requirements.").[10]  "Courts are not the proper forum for citizens to 'air generalized grievances' about the administration of a governmental agency[,]" and therefore generalized grievances are not enough. ***Cornwell Pers. Assocs., Ltd. v. DILHR***, 92 Wis. 2d 53, 62, 284 N.W.2d 706 (Ct. App. 1979) (citing ***Flast v. Cohen***, 392 U.S. 83, 106 (1968)).  A plaintiff "raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state" an injury sufficient to confer standing.  ***Hollingsworth***, 570 U.S. at 706 (citing ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 573-74 (1992)).[11]

---

[10]  "Wisconsin has largely embraced federal standing requirements," and so our state courts "look to federal case law as persuasive authority regarding standing questions." ***Friends of the Black River Forest***, 402 Wis. 2d 587, ¶17 (citations omitted).

[11]  Pellegrini's failure to show an imminent threat to his legal rights necessarily defeats any attempt to show causation *and* redressability of Pellegrini's legal rights.  *See **State ex rel. First Nat'l Bank of Wis. Rapids v. M&I Peoples Bank of Coloma***, 95 Wis. 2d 303, 307-09, 290 N.W.2d 321 (1980) (to establish standing in Wisconsin, a plaintiff must suffer an actual or threatened injury, caused by the defendant and redressable by the application of the judicial power).

*C. The Dissent's Attempt to Distinguish **Brown** Is Inapt.*

¶30     Coming up with its own theory, the dissent suggests that this case is distinguishable from **Brown** because Pellegrini challenges an order and rule setting forth WEC's policy for resolving WIS. STAT. § 5.06 elector complaints beforehand, rather than after an adverse *decision* of such complaints by WEC pursuant to that order and rule.  Dissent, ¶¶98-102.

¶31     This argument is squarely at odds with the text of WIS. STAT. § 227.40(1), which explicitly requires a showing that a "*rule or guidance document or its threatened application* interferes with or impairs, or threatens to interfere with or impair, the legal rights and privileges *of the plaintiff.*"  **Id.** (emphases added). The dissent ignores that standing under § 227.40(1) requires a demonstration by a plaintiff that he or she has been or will be injured in fact by the challenged agency conduct, whether it is a rule, a guidance document, or its threatened application, in a decision.   There is no exception to the statutory injury-in-fact text for a process-based rule or guidance document.

¶32     In addition to the explicit statutory language, the supreme court has made clear that, "regardless of the nature of the case and the particular terminology used in the test for standing," the "basic thrust" of the standing inquiry is the same whether the challenge is to a "rule or decision of an administrative agency[.]" **Foley-Ciccantelli v. Bishop's Grove Condo. Ass'n**, 2011 WI 36, ¶¶40, 44, 333 Wis. 2d 402, 797 N.W.2d 789 (explaining that the test for standing depends on whether the party whose standing is challenged has a personal interest in the controversy (sometimes referred to in the case law as a "'personal stake' in the controversy")).  Thus, "[s]tanding for purposes of challenging an administrative decision is similar to the statutory requirements to challenge an administrative

14

rule[,]" and decisions on standing to challenge agency decisions are "conclusive" on standing to challenge agency rules. ***Wisconsin Hosp. Ass'n v. Natural Res. Bd.***, 156 Wis. 2d 688, 702, 457 N.W.2d 879 (Ct. App. 1990).

¶33    In short, the dissent's attempt to "distinguish" ***Brown*** because Pellegrini challenges an agency order and rules and not their threatened application in a decision affecting him personally is in direct conflict with WIS. STAT. § 227.40(1) and countless Wisconsin decisions affirmed by ***Brown***, all of which make it clear that an elector lacks standing absent a showing that the administrative action has or will "personally affect[] him[,]" caused him to "personally suffer[] … an injury[,]" or "injure[] him personally in any way[.]" ***Brown***, 414 Wis. 2d 601, ¶¶16-17.

## D. Pellegrini's Elector and Taxpayer Arguments Are Unavailing.

¶34    Pellegrini's alternative arguments are similarly unavailing. First, we reject Pellegrini's contention that his prior WIS. STAT. § 5.06 elector complaint satisfies the actual or threatened harm requirement, as it was ultimately resolved in his favor and dismissed with prejudice before he even filed this action.[12]    This resolved case renders any argument moot; Pellegrini cannot show that he has suffered or will suffer a direct injury to a legally protected interest.[13]

---

[12] In Waukesha County Circuit Court Case No. 2022CV4, the Honorable Michael J. Aprahamian presiding, Pellegrini challenged a WEC decision that was issued by the administrator, but was ultimately resolved by the circuit court in his favor, and dismissed with prejudice.

[13] Notably, the circuit court in that case rejected Pellegrini's attempt to assert the same stand-alone challenge to WEC's decision-making process after his WIS. STAT. § 5.06 challenge was resolved in his favor. The court determined that the challenge was moot, and without a live controversy involving an adverse WEC decision (involving the challenged process), an advisory opinion was improper. Waukesha County Circuit Court Case No. 2022CV4. ("[T]he Court finds that the delegation issue is moot, and continued litigation would result in an advisory opinion on a matter not necessary to resolve the case.").

15

¶35    We also reject Pellegrini's alternative arguments that he has elector and taxpayer standing.  Neither support standing.

¶36    First, the supreme court's decision in *Brown*, 414 Wis. 2d 601 refutes Pellegrini's argument (and the circuit court's determination) that elector status provides standing.  Pellegrini relies on the lead and concurring opinions in *Teigen*, 403 Wis. 2d 607, to base standing on the idea that WEC's decision-making process interfered with Pellegrini's right to vote.  The supreme court's decision in *Brown* makes clear that the three-justice lead decision in *Teigen* supporting stand-alone elector standing is not controlling.  Specifically, because the supreme court rejected Justice Hagedorn's concurring decision that relied exclusively on WIS. STAT. § 5.06 to support standing for an elector,[14] *Teigen* provides no precedential support for stand-alone elector standing.  *See Brown*, 414 Wis. 2d 601, ¶19.

¶37    Furthermore, a majority of the supreme court justices in *Teigen* declined to embrace the lead opinion's "vote pollution" theory, that unlawful votes pollute lawful votes.  *See* 403 Wis. 2d 607, ¶25.  As noted above, while the lead opinion adopted that theory, only three justices joined it.  *See id.*  Justice Hagedorn, whose vote was controlling, called the lead opinion's standing analysis "unpersuasive" and pointed out that it did not "garner the support of four members of this court."  *Id.*, ¶167 (Hagedorn, J., concurring in part); *see id.*, ¶¶205 n.1, 210-15 (Walsh Bradley, J., dissenting) (explaining that vote-pollution theory "do[es] not constitute precedential authority").

---

[14] Justice Hagedorn opined that WIS. STAT. § 5.06 gave all Wisconsin voters a judicially enforceable statutory right to have election officials comply with the law, even without a further showing of injury.  *Teigen*, 403 Wis. 2d 607, ¶165 (Hagedorn J., concurring in part).  Six justices in *Teigen* rejected this theory, *see id.*, ¶¶22 n.12, 32-35; *id.*, ¶¶210-15 (Walsh Bradley, J., dissenting), as did the supreme court in *Brown*.  *See* 414 Wis. 2d 601, ¶19.

¶38    Thus, at issue is whether, as required by the supreme court in **Brown**, Pellegrini has alleged an actual or threatened injury to his right to vote. Here, as did the circuit court, Pellegrini contends that an administrator could resolve WIS. STAT. § 5.06 complaints incorrectly, which in turn could impact his right to vote.

¶39    A future unknown elector's WIS. STAT. § 5.06 complaint affecting all electors' rights to vote (thus, including Pellegrini's) that could be resolved by the administrator incorrectly is "merely hypothetical or conjectural[,]" **Fox**, 112 Wis. 2d at 532, which is insufficient under supreme court precedent for him to establish standing as an elector.

¶40    The circuit court's reliance on Pellegrini's taxpayer standing argument is equally unavailing.

¶41    Pellegrini alleges that he has a taxpayer standing argument because WEC and its staff improperly spend state funds when they investigate and decide WIS. STAT. § 5.06 complaints pursuant to the challenged delegation policy.

¶42    As Justice Hagedorn recently explained, the supreme court's "taxpayer standing cases have always involved an alleged illegal expenditure distinct from staff time." **Teigen**, 403 Wis. 2d 607, ¶163 n.2 (Hagedorn, J., concurring in part). Justice Hagedorn identified multiple cases showing that there is no legal support for the argument that the expenditure of tax dollars can be premised upon the mere fact that government staff employees have devoted some time to a challenged policy. Pellegrini cites no authority showing otherwise.

¶43    Justice Hagedorn further explained that, if taxpayer standing could be construed that broadly, it "would mark a radical departure in the law." **Id.**, ¶163. "It would mean any taxpayer could challenge almost any government action—as

long as a government employee devoted some time and attention to the matter." ***Id.*** This "would practically eliminate standing as a consideration in most challenges to government action." ***Id.*** It is clear that Pellegrini's taxpayer status argument is without merit.

### E. Judicial Policy Does Not Support Pellegrini's Attempt to Evade the Standing Requirement Set Forth in WIS. STAT. § 227.40(1).

¶44   Finally, judicial policy cannot dispense with the statutory and caselaw requirements of WIS. STAT. § 227.40(1), which encompasses rules (with no exception for process-oriented rules), and provides for judgment "only" if Pellegrini shows an imminent and concrete threat to his legal rights. The primary case Pellegrini cites, ***McConkey v. Van Hollen***, 2010 WI 57, 326 Wis. 2d 1, 783 N.W.2d 855, does not hold otherwise, as it is a common-law standing decision not controlled by a statutory standing provision. For that reason alone (that here, WIS. STAT. § 227.40(1) applies), it is materially distinguishable.[15]   And, ultimately, the ***McConkey*** court *did* claim to identify a "trifling" injury in fact. ***Id.***, ¶17.

¶45   Perhaps more to the point, our supreme court has clarified that sound judicial policy cannot and does not supplant the two-step standing inquiry; it *requires* it. ***Friends of the Black River Forest***, 402 Wis. 2d 587, ¶¶17-18. Courts evaluating standing are required to consider whether to protect the interest of a party with a personal stake and who will be adversely affected. ***Foley-Ciccantelli***, 333 Wis. 2d 402, ¶5. Because standing is not constitutionally required, as a matter of sound judicial policy, standing courts ask first whether the decision of the agency directly causes injury to the interest of a petitioner and then considers whether that

---

[15] The dissent cites a single justice's concurrence in ***Koble Invs. v. Marquardt***, 2026 WI 19, ¶48, 420 Wis. 2d 304, 35 N.W.3d 488 (Crawford, J., concurring), but that case did not involve a challenge to an administrative rule or guidance, nor did it address the explicit statutory language of WIS. STAT. § 227.40(1).

interest asserted is "an interest which the law recognizes or seeks to regulate or protect." ***Friends of the Black River Forest***, 402 Wis. 2d 587, ¶2 (citation omitted).

¶46 To be clear, ***McConkey***, 326 Wis. 2d 1, is not an alternative avenue, nor is it a blank slate upon which to write a policy-based exception to WIS. STAT. § 227.40(1). Again, Wisconsin courts employ "judicial policy," which *is* the two-step test, to guide standing because we do not have a constitutional provision addressing the same. It is that simple. And, again, absent a showing of injury in fact, the complaint must be dismissed. *See **Brown***, 414 Wis. 2d 601, ¶26; *see **Fox***, 112 Wis. 2d at 525-27. Judicial policy does not support extending standing to a wholly speculative claimed future injury.

## CONCLUSION

¶47 Properly applying the standing doctrine ensures that parties come to the circuit court with actual or immediately threatened interference or impairment of their legal rights—rights that are personal *to them* and which can be remedied *for them* by a decision in this case. Judicial policy does not dispense with the injury in fact requirement. Pellegrini clearly seeks an advisory opinion that would have no actual impact on his rights or privileges. Because Pellegrini has failed to allege an injury in fact, we reverse and remand. The complaint must be dismissed.[16]

*By the Court*.—Judgment reversed and cause remanded with directions.

---

[16] I agree with the parties that publication would be appropriate because the issues presented are of statewide importance. WIS. STAT. RULE 809.23(1)(a)5.

19

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

No.    2024AP2164(C)


¶48    GUNDRUM, J. (*concurring*).  I join in the mandate of the lead opinion,[1] but I write separately to emphasize that the dissent raises some excellent points regarding the merits of the underlying issue of whether the statutes allow for the Wisconsin Elections Commission (WEC) to delegate the resolution of complaints to a staff member.  We are not able to reach a final resolution on that issue today, however, because the legislature also saw fit to establish a specific standard for "judicial review of the validity of a rule or guidance document" by way of declaratory judgment.  *See* WIS. STAT. § 227.40(1).  As the lead opinion notes, Lead op., ¶10, the relevant statute, § 227.40(1), provides that

> [t]he court shall render a declaratory judgment in the action *only* when it appears from the complaint and the supporting evidence that the rule or guidance document or its threatened application interferes with or impairs, or threatens to interfere with or impair, the legal rights and privileges *of the plaintiff.*

(Emphases added.)

¶49    It is worth highlighting that the legislature could have written this same provision without the word "only," and had it done so, we might well read it in essentially the same manner as we do with the inclusion of that word.  But, the legislature instead chose to add the word "only," underscoring that "a declaratory judgment in the action" shall *not* be rendered if it does not appear as if "the rule or

---

[1] The lead opinion relies heavily upon our state supreme court's decision in ***Brown v. WEC***, 2025 WI 5, 414 Wis. 2d 601, 16 N.W.3d 619.  I strongly disagree with ***Brown*** and believe the two dissents in that case were correct, not the majority.  Because of this and because I believe reversal is required by the plain language of WIS. STAT. § 227.40(1) alone, reliance upon ***Brown*** is unnecessary.

guidance document or its threatened application interferes with or impairs, or threatens to interfere with or impair" "the plaintiff['s]" legal rights and privileges.

¶50     While it appears as if the standing standard of WIS. STAT. § 227.40(1) would be easy enough to satisfy had Pellegrini filed and had pending a WIS. STAT. § 5.06 complaint and brought an action seeking a declaratory judgment holding that the complaint must be resolved by a vote of the full commission, not a staff member, such is not the status here.  Indeed, had Pellegrini even identified a violation that could be brought under § 5.06 and concretely explained he was planning to file a complaint with WEC related to the violation but was concerned that, pursuant to the delegation policy, a staff member would decide the issue rather than the full commission, even that may have been sufficient for standing.  Pellegrini, however, did not make any allegations which would indicate he would likely file another complaint with WEC such that the delegation policy would likely be applied to him in the future.  Thus, because Pellegrini failed to allege any facts to support a conclusion that his legal rights or privileges are in jeopardy of interference or impairment, *see* § 227.40(1), we are not able to resolve the merits.

No.   2024AP2164(D)

¶51   GROGAN, J. (*dissenting*).  My colleagues hide behind a misguided interpretation of the standing doctrine to dodge the important legal issue this case presents.  And even if my colleagues are correct—though they are not—the merits of the issue presented should be decided because our law authorizes doing so. Standing is not jurisdictional in Wisconsin,[1] and it should not be used as a tool to avoid deciding the merits of important issues when the standing doctrine's purpose is met—as it clearly is here under this unique set of facts and where the stakes unquestionably carry statewide importance and significance.

¶52   The Wisconsin Elections Commission ("WEC" or "Commission"), an agency that exists and operates by a set of statutes, is blatantly violating the law governing it.  Judges in this court are elected to decide important legal issues and correct circuit court errors where such errors exist.  Here, this court evades the important legal issue and "corrects" an error even though there is no error to correct. This court compounds *its* own error by donning the proverbial blinders and choosing not to address whether WEC is breaking the law by insisting Pellegrini lacks standing and dismissing the directive set forth in ***McConkey v. Van Hollen***, 2010 WI 57, ¶¶15-19, 326 Wis. 2d 1, 783 N.W.2d 855.  For whatever reason, it seems my

---

[1] *See **McConkey v. Van Hollen***, 2010 WI 57, ¶¶15-19, 326 Wis. 2d 1, 783 N.W.2d 855 ("[S]tanding in Wisconsin is not a matter of jurisdiction, but of sound judicial policy."); *see also* Nathan A. Petrashek, *The Shifting Sands of Standing in Wisconsin*, 98 WIS. LAW. 8-13, at 10 (May 2025), https://www.wisbar.org/NewsPublications/WisconsinLawyer/WisconsinLawyerPDFs/98/05//8_1 3.pdf ("[I]t is important to note that unlike federal law, Wisconsin law does not impose a jurisdictional standing requirement.").  Now-Court of Appeals-Judge Petrashek noted: "Far from elucidating standing principles in Wisconsin, ***Brown*** provides ample fodder for future litigation. Incongruity seems to be a consistent feature of state standing doctrine, which continues to shift like sand under litigants."  Petrashek, 98 WIS. LAW. at 13.

colleagues would rather avoid addressing the merits of another important election integrity issue—an issue that may now evade judicial review indefinitely under the Lead Opinion. There is no question regarding the merit and significance of the election integrity issue presented, and by not deciding it, my colleagues not only signal that they approve of WEC's violation of the law, but they also give WEC permission to continue to break the law ad infinitum—with little likelihood that a court will be in a position to review the merits maybe ever. This prolonged evasion is clear from the timeline present here: Pellegrini initiated litigation on this issue in 2020, and yet after six years of long, protracted, and undoubtedly costly litigation, this court dismisses this important issue on standing—leaving the merits unresolved.

¶53 When Pellegrini first raised this issue in *Pellegrini I*, *see infra*, ¶¶61-64, the *circuit court* declined to address the issue presented because it believed "the delegation issue [was] likely to come before courts again" and was therefore not "likely to evade review." WEC's lawyer argued to that court that *Pellegrini I* was not the correct action to decide this issue and suggested Pellegrini must instead bring a declaratory judgment action to have the court address it. WEC's lawyer told the circuit court that: "Even if Pellegrini's complaint had purported to state a separate claim challenging the Commission's delegation policy, declaratory and injunctive relief invalidating that policy is not available in an appeal of a Commission decision under WIS. STAT. § 5.06." When Pellegrini subsequently did exactly as the WEC lawyer argued he must, the circuit court in *this* case correctly decided this issue.[2] But now *this* court refuses to do so and instead says the exact

---

[2] Pellegrini is rightly concerned that if WEC made these conflicting arguments in his case, there is nothing stopping WEC from doing that again in any future case. After all, the circuit court bought WEC's argument in *Pellegrini I*, and now my colleagues bought WEC's conflicting argument here in *Pellegrini II*.

opposite—Pellegrini needs an *active* § 5.06 claim before he can ask a court to decide the merits of his declaratory judgment action. It seems the courts have forced Pellegrini into quite a "catch-22"—a no win—absurd position. And, as a result, after over six years of litigation, Pellegrini's meritorious claim goes unanswered, and the unelected, unaccountable WEC administrator retains the power to decide and dismiss—at times single-handedly—election law violations despite the statute's requirement that the commissioners, and *only* the commissioners, do so. The Lead Opinion's error rests largely (though not entirely) on its conclusion that ***Brown v. WEC***, 2025 WI 5, 414 Wis. 2d 601, 16 N.W.3d 619 controls—but as I set forth below, it does not. This is a declaratory judgment action, not a ***Brown*** case. The Lead Opinion then compounds its error by disregarding ***McConkey***'s applicability in resolving standing matters.

¶54 Because my colleagues refuse to address the merits, WEC's violation of the law goes unchecked, unstopped, and unexamined. The people of Wisconsin deserve better. Election laws must be followed and when they are not, it is this court's responsibility to say so. I will not join my colleagues in dodging this important decision.[3]

¶55 If Pellegrini files a Petition for Review, our supreme court should grant it because even if it ultimately agrees that Pellegrini does not have standing under WIS. STAT. § 227.40 (which he clearly does), the merits of this legal issue requires resolution given the far-reaching implications of WEC's Delegation Policy.

---

[3] The Lead Opinion says Pellegrini's prior WIS. STAT. § 5.06 complaint "was ultimately resolved in his favor[.]" Lead op., ¶34. Although it is true enough that Pellegrini ultimately prevailed on the underlying § 5.06 violation in that matter, he did so only because the supreme court decided ***Teigen v. WEC***, 2022 WI 64, 403 Wis. 2d 607, 976 N.W.2d 519 (plurality opinion), *overruled in part by* ***Priorities USA v. WEC***, 2024 WI 32, 412 Wis. 2d 594, 8 N.W.3d 429, while his appeal to the circuit court of WEC's decision *against* him was pending. But the merit of the Delegation Policy issue was not decided.

Notably, the issue Pellegrini presents has the potential to impact *every* individual *regardless of where he or she falls on the political spectrum*, and the parties have thoroughly and zealously presented their arguments on appeal—both at oral argument and in their appellate briefing. *See McConkey*, 326 Wis. 2d 1, ¶¶15-16 ("[S]tanding in Wisconsin is not a matter of jurisdiction, but of sound judicial policy."). While I conclude Pellegrini has standing and that *Brown* does *not* control, *McConkey* provides an additional basis for reaching and resolving the merits of the issue presented in this appeal because doing so promotes judicial efficiency, particularly where waiting for another plaintiff would not enhance the court's understanding. Notably, a supreme court justice recently recognized that when the *McConkey* factors are met—as they clearly are in this case—the merits should be addressed. *See Koble Invs. v. Marquardt*, 2026 WI 19, ¶48, 420 Wis. 2d 304, 35 N.W.3d 488 (Crawford, J., concurring) (explaining that "[w]hen a plaintiff can fulfill the[] objectives" "of … '[1] ensuring that the issues and arguments presented will be carefully developed and zealously argued,' and '[2] informing the court of the consequences of its decision'" "as well as any other individual, judicial policy may counsel that the plaintiff has standing" so that the merits can be addressed (quoting *McConkey*, 326 Wis. 2d 1, ¶¶16-18)). In light of these factors, applying the *McConkey* framework under these circumstances does not pose a risk of opening the floodgates.

¶56 While I do not dispute that standing is an important and integral component of our jurisprudence, it is also necessary—indeed, imperative—to recognize the reason for applying the standing doctrine in the first place. Here, Pellegrini had a valid claim in *Pellegrini I*; however, due to the slow process of judicial review, an intervening supreme court case, and the circuit court's declination to decide this issue in *Pellegrini I*, WEC's Delegation Policy goes

unreviewed.[4] Had I written the decision in this case, it would have said as follows (absent a few footnotes I have added responding to the Lead Opinion).[5]

¶57 The Wisconsin Elections Commission appeals from the judgment entered following the circuit court's grant of summary judgment in favor of Robert Pellegrini as to WEC's inability to delegate decision-making authority to its Administrator for the purpose of resolving WIS. STAT. § 5.06 complaints and from the denial of its own motion for summary judgment. More specifically, WEC challenges the court's conclusions that: (1) it could not delegate resolution of § 5.06 claims and that its attempt to do so via the Delegation Order[6] was unlawful and *ultra vires*; and (2) WIS. ADMIN. CODE § EL 20.04(6) and (10) are "invalid and unenforceable" to the extent they conflict with the court's ruling. WEC contends it *did* have the requisite authority to delegate certain aspects of its § 5.06 decision-making authority to its Administrator pursuant to WIS. STAT. § 15.02(4) and that § EL 20.04(6) and (10) do not conflict with § 5.06, thus rendering the court's contrary conclusions erroneous. WEC also challenges the court's prior order concluding Pellegrini had standing to pursue his claims.

¶58 Having reviewed the briefs and Record, along with having held oral argument to further parse the parties' respective positions, I conclude the circuit

---

[4] The Lead Opinion also suggests that Pellegrini's complaint is moot. Lead op., ¶34. But, it ignores the fact that courts often decide issues that are moot when certain exceptions apply—and almost every exception applies here. *See Portage County v. J.W.K.*, 2019 WI 54, ¶12, 386 Wis. 2d 672, 927 N.W.2d 509.

[5] I also note the Lead Opinion criticizes Pellegrini and the Dissent for reciting general phrases from opinions and cases when it is the Lead Opinion—not Pellegrini or the Dissent—that appears to cherry-pick quotes without bothering to fully read the cases which it cites and on which it relies. Given the need to release this opinion prior to Judge Lisa Neubauer's impending retirement, I do not have the luxury of time to identify each instance in which the Lead Opinion engaged in cherry-picking and trust instead that the reader is capable of doing so.

[6] *See infra* ¶60.

court did not err when it determined Pellegrini has standing to pursue these claims and in concluding that WEC's commissioners themselves must resolve WIS. STAT. § 5.06 complaints, thereby precluding WEC's ability to delegate resolution of § 5.06 complaints to any other individual. Pellegrini certainly has alleged at least a trifling interest, and he is undeniably threatened by WEC's continued use of its unlawful Delegation Policy more so than just any other elector based on the facts and circumstances here. Because WEC cannot delegate resolution of § 5.06 complaints, I further conclude that the Delegation Order and WIS. ADMIN. CODE § EL 20.04(6) and (10) are invalid to the extent they conflict with this decision and § 5.06's requirements.[7] Accordingly, I would affirm.

## I. BACKGROUND

*A. WEC and its February 2020 Delegation Order*

¶59 The Wisconsin Legislature established WEC in 2016, *see* 2015 Wis. Act 118, § 155 and WIS. STAT. § 15.61, and charged it with "the administration of [WIS. STAT.] chs. 5 to 10 and 12 and other laws relating to elections and election campaigns, other than laws relating to campaign financing." WIS. STAT. § 5.05(1). As relevant here, the legislature tasked WEC with resolving voter complaints filed under WIS. STAT. § 5.06. *See id.*; § 5.05(1)(e) (WEC may "[i]ssue an order under [§] 5.06"). Pursuant to § 5.06, a Wisconsin elector may file a complaint with WEC if he or she believes a local election official has failed to comply with the law or

---

[7] In light of these conclusions, it is not necessary to address Pellegrini's alternate argument that the Delegation Order is an unpromulgated rule as that argument is dependent upon my having reached a conclusion that WEC *was* statutorily authorized to delegate resolution of WIS. STAT. § 5.06 complaints. *See State v. Lickes*, 2021 WI 60, ¶33 n.10, 397 Wis. 2d 586, 960 N.W.2d 855 ("Issues that are not dispositive need not be addressed." (quoted source omitted)); *Martinez v. Rullman*, 2023 WI App 30, ¶5, 408 Wis. 2d 503, 992 N.W.2d 853 (stating that this court decides cases on the narrowest grounds possible). Because I do not address this alternate argument, I have largely omitted further reference to the parties' respective arguments on that point.

otherwise abused his or her discretion in certain election-related matters. Specifically, § 5.06(1) provides that:

> Whenever any elector of a jurisdiction or district served by an election official believes that a decision or action of the official or the failure of the official to act with respect to any matter concerning nominations, qualifications of candidates, voting qualifications, including residence, ward division and numbering, recall, ballot preparation, election administration or conduct of elections is contrary to law, or the official has abused the discretion vested in him or her by law with respect to any such matter, the elector may file a written sworn complaint with the commission requesting that the official be required to conform his or her conduct to the law, be restrained from taking any action inconsistent with the law or be required to correct any action or decision inconsistent with the law or any abuse of the discretion vested in him or her by law. The complaint shall set forth such facts as are within the knowledge of the complainant to show probable cause to believe that a violation of law or abuse of discretion has occurred or will occur. The complaint may be accompanied by relevant supporting documents. The commission may conduct a hearing on the matter in the manner prescribed for treatment of contested cases under [WIS. STAT.] ch. 227 if it believes such action to be appropriate.

*Id.* Section 5.06 further details the complaint resolution process and sets forth steps the legislature has authorized WEC to take, which includes investigating complaints raised and issuing decisions regarding allegations made. *See* § 5.06(2), (4)-(7).

¶60 In late February 2020, WEC unanimously agreed to delegate certain election-related responsibilities, including the authority to resolve WIS. STAT. § 5.06

7

complaints, to its Administrator, and it memorialized that delegation in writing (the

Delegation Order).[8]  As relevant here, the Delegation Order states:

> The following authority is delegated to the Administrator
> subject to the requirement that before it is exercised, the
> Administrator consult with the Commission Chair to
> determine whether a special meeting is conducted before
> action is taken:
>
> a.  To issue compliance review orders under the provisions
>     of WIS. STAT. § 5.06.  Prior to compliance review orders
>     being issued, the following actions shall be taken:
>     i.   Commission staff shall provide to Commissioners
>          the parties' filings as they are received and post the
>          filings on the Commission's website.
>     ii.  If time permits, as determined by the Administrator
>          in consultation with the Chair, staff shall provide
>          draft decisions to all Commissioners prior to their
>          issuance.  The Administrator and Chair shall
>          determine whether it is feasible to permit
>          Commissioners to submit comments regarding the
>          draft decision given statutory and administrative
>          deadlines, and the amount of time allowed to
>          submit comments.
>     iii. If time permits, Commissioners who wish to
>          comment on the draft decision may contact the
>          Administrator but shall not discuss the case with
>          other Commissioners, except as allowed by the
>          open meeting law.  The Administrator shall
>          determine whether any comments or input
>          provided by Commissioners will be incorporated
>          into the final decision.
>     iv.  If two or more Commissioners ask the
>          Administrator to request a special meeting

---

[8] Pellegrini attached a copy of WEC's response to his December 2021 open records request, which included a copy of the Delegation Order, to the Amended Complaint.  In its Response, WEC admitted it had "delegated some of its powers and duties under WIS. STAT. § 5.06 to its Administrator, or in some cases to its Chairperson."  The Delegation Order also delegates activities such as certifying and signing election-related documents, communicating with counsel, executing and signing certain types of contracts, and other election-related responsibilities. Pellegrini challenges only Part 1.a.ii-iv of the Delegation Order, and our references to the Delegation Order throughout pertain specifically to those challenged provisions unless otherwise noted or context indicates otherwise.  The relevant factual background set forth herein is largely taken from the Amended Complaint, and given the cross-motions for summary judgment, the facts are generally undisputed.

> regarding a Section 5.06 draft decision, the Administrator will discuss with the Commission Chair such requests and the Chair will determine whether to hold a special meeting prior to release of the decision.

WEC does not dispute that it has thereafter followed this procedure to resolve § 5.06 complaints.

## B. *Pellegrini I* *(The Prior Matter)*

¶61 After WEC passed the Delegation Order, but before Pellegrini, who lives in Waukesha County and is a registered voter, filed the lawsuit underlying the appeal at issue here, Pellegrini filed a WIS. STAT. § 5.06 complaint with WEC against Darlene Igl, the Village of Hartland Municipal Clerk (*Pellegrini I*).[9] Although that § 5.06 complaint, along with the litigation that followed, are not directly at issue on appeal, background information pertaining to that prior matter is nevertheless relevant to the extent it provides context for the issues and arguments raised in the current matter.

¶62 In a June 2021 WIS. STAT. § 5.06 complaint, Pellegrini alleged that Igl was relying on August 2020 WEC guidance indicating that the use of unstaffed ballot drop boxes was consistent with "in person" voting and therefore did not conflict with WIS. STAT. § 6.855's requirements. Believing WEC's guidance to be contrary to law, Pellegrini's complaint sought to prohibit Igl from relying on and implementing it.

¶63 In December 2021, WEC Administrator Meagan Wolfe issued a decision—which she alone signed—dismissing Pellegrini's complaint. Following

---

[9] Waukesha County Circuit Court Case No. 2022CV4, the Honorable Michael J. Aprahamian presiding.

9

receipt of that decision, Pellegrini submitted an open records request that generally sought to discern whether WEC's commissioners had been involved in the decision-making process. In response to Pellegrini's open records request, WEC confirmed that although the commissioners had received emailed copies of Pellegrini's complaint and a draft of the decision denying his complaint, there were no responsive records as to when and how each of the commissioners had voted because they had not voted at all. WEC's open records response also asserted that WEC had resolved Pellegrini's complaint in compliance with the Delegation Order, a copy of which it also provided to him. It was at that time that Pellegrini affirmatively learned of the Delegation Order.

¶64 Subsequent to receiving WEC's response to his open records request, Pellegrini sought judicial review of WEC's decision dismissing his complaint in *Pellegrini I*. While that matter was pending, our supreme court issued its decision in *Teigen v. WEC*, 2022 WI 64, 403 Wis. 2d 607, 976 N.W.2d 519 (plurality opinion), *overruled in part by Priorities USA v. WEC*, 2024 WI 32, 412 Wis. 2d 594, 8 N.W.3d 429, in which it held that "ballot drop boxes are illegal under [the] Wisconsin statutes" and that absentee ballots must therefore "be returned by mail" or by the voter in person to the clerk. *Teigen*, 403 Wis. 2d 607, ¶4 (plurality opinion). As a result, in October 2022, the circuit court in *Pellegrini I* reversed WEC's decision dismissing Pellegrini's complaint and entered judgment in Pellegrini's favor. In doing so, the court declined to address Pellegrini's challenge to the validity of those portions of the Delegation Order that delegated WEC's authority to resolve WIS. STAT. § 5.06 complaints to its Administrator. In declining to address Pellegrini's arguments, the court agreed with WEC's assertion that

10

Pellegrini's argument on that point was moot and that he would instead need to raise such a challenge in a subsequent lawsuit.[10]

## C. *Pellegrini II* (The Current Matter)

¶65 In November 2022, shortly after the circuit court declined to address his arguments regarding the validity of the Delegation Order in *Pellegrini I*, Pellegrini initiated the current declaratory judgment action pursuant to WIS. STAT. §§ 227.40 and 806.04 (*Pellegrini II*).[11] In this declaratory judgment action, Pellegrini challenges both "the validity of the delegation by WEC of its power and duty to investigate and decide complaints by voters under WIS. STAT. § 5.06" and "the validity of [the] administrative rules" WEC allegedly relied upon in authorizing what Pellegrini describes as the "illegal" Delegation Order. More specifically, he asserts the following: (1) that WIS. ADMIN. CODE § EL 20.04(6) and 20.04(10) (what he refers to as the "Rule")[12] conflict with the requirement that WEC's commissioners themselves resolve WIS. STAT. § 5.06 complaints and are therefore invalid and unenforceable to the extent they purport to authorize WEC to delegate the commissioners' "duties and powers to decide" § 5.06 complaints; and (2) that

---

[10] Specifically, the circuit court stated that it "disagrees with Mr. Pellegrini that he brought a separate and independent claim challenging the Delegation Order" and that Pellegrini's "only claim was under WIS. STAT. § 5.06(8) for judicial review of WEC's December 6, 2021, decision denying his complaint against Ms. Igl." Consequently, it said, "[t]here was no claim challenging the validity of the Delegation Order, and the delegation issue was presented only as an alternative ground for reversing WEC's decision." Based on that conclusion, the court declined to address what it determined to be a moot issue, stating that doing so "would result in an advisory opinion on a matter not necessary to resolve the case." According to the court, it was unnecessary to apply the well-known exceptions to the mootness doctrine because it believed "the delegation issue [was] likely to come before courts again" and was therefore not "likely to evade review."

[11] Pellegrini filed the initial Summons and Complaint on November 17, 2022, followed by an Amended Summons and Complaint on November 28, 2022. All subsequent references to the Summons and Complaint refer to the Amended Summons and Complaint unless otherwise noted.

[12] Throughout this litigation, Pellegrini refers to WIS. ADMIN. CODE § EL 20.04(6) and (10) collectively as the "Rule." I, however, will refer to each provision separately for clarity.

the Delegation Order is *ultra vires* because Wisconsin law does not authorize WEC to delegate the commissioners' § 5.06 duties. Alternatively, Pellegrini asserts the Delegation Order is an invalid and unlawful rule that WEC failed to promulgate in compliance with WIS. STAT. ch. 227.[13] To that end, Pellegrini seeks: (1) "[a]n order declaring that the Rule [§ EL 20.04(6) and (10)] is invalid and void;" (2) "[a]n order declaring that the Delegation Order is *ultra vires* and invalid" or, in the alternative, that it is invalid because it is an improperly promulgated rule; and (3) an injunction prohibiting WEC from delegating the commissioners' authority and responsibility to resolve § 5.06 complaints.

### 1. WEC's Motion to Dismiss for Lack of Standing

¶66 In response to Pellegrini's Complaint, WEC filed a motion to dismiss on the ground that Pellegrini lacked standing to challenge the Delegation Order because there was no "live" WIS. STAT. § 5.06 complaint. First, WEC asserted Pellegrini could only challenge the Delegation Order (or the statutes and administrative code provisions he alleged WEC relied upon in passing the Delegation Order) within the context of an active WIS. STAT. § 5.06 complaint. Because Pellegrini had no such active complaint pending, it said, "resolution of his current challenge to the delegation policy would be purely academic and would have no practical effect on any underlying controversy[,]" thus rendering any opinion issued advisory in nature. In other words, according to WEC, a "challenge to the delegation policy, standing alone, does not present a live, justiciable controversy."

¶67 Next, WEC asserted Pellegrini lacked elector standing because the Delegation Order "governs internal Commission procedure" for resolving WIS.

---

[13] Though I do not address this issue, I include reference to it here because the allegation is relevant to the issue of standing.

STAT. § 5.06 complaints and that the policy itself "does not threaten to mislead local election officials into violating any election law[,]" which is what § 5.06 authorizes a voter to challenge. Therefore, WEC said, Pellegrini did not have standing as an elector under WIS. STAT. § 227.40(1) to challenge its procedural policy "in the abstract and independent of any injury in fact."[14]

¶68 Finally, WEC challenged Pellegrini's suggestion that this matter was properly before the court based on WEC's suggestion in *Pellegrini I* that Pellegrini, should he wish to challenge the Delegation Order, could do so in a matter subsequent to *Pellegrini I*. First, it said, nothing it may have asserted or argued in *Pellegrini I* would "overcome the claim preclusive effect of the final judgment in the earlier case" and that any statement it may have made "in *Pellegrini I* is irrelevant to the standing and claim preclusion issues here." WEC also disputed any suggestion it had "conceded" that "Pellegrini could simply replead his [Delegation Order] claim by bringing an action like this one" and instead explained it had argued only that the challenge Pellegrini had raised was not likely to evade judicial review

---

[14] Pellegrini most certainly has standing, and, under the facts and circumstances of this case, is a proper plaintiff who more than satisfies the purposes of Wisconsin standing law. WEC also asserted that Pellegrini lacked taxpayer standing. Although the circuit court concluded Pellegrini had standing both as an elector and as a taxpayer, I do not address the parties' respective arguments regarding taxpayer standing in light of my conclusion that Pellegrini has standing as an elector under WIS. STAT. § 227.40. *See Lickes*, 397 Wis. 2d 586, ¶33 n.10; *Martinez*, 408 Wis. 2d 503, ¶5.

because it could "be litigated in a properly pleaded case under WIS. STAT. § 227.40."[15]

¶69 Pellegrini, to the contrary, asserted that WEC's standing challenge lacked merit. Noting that a mere "trifling interest" can be sufficient to establish standing, *see Friends of the Black River Forest v. Kohler Co.*, 2022 WI 52, ¶19, 402 Wis. 2d 587, 977 N.W.2d 342, Pellegrini first argued he had standing as an elector, particularly in the context of a declaratory judgment action, because he had established a threatened injury—application of the challenged Delegation Order's procedures to a future WIS. STAT. § 5.06 claim—and because he had a legally protected interest in having WEC's commissioners resolve § 5.06 voter complaints in compliance with the law. *See Friends of the Black River Forest*, 402 Wis. 2d 587, ¶2; *Marx v. Marris*, 2019 WI 34, ¶35, 386 Wis. 2d 122, 925 N.W.2d 112 (stating that a legally protected interest is required to show injury or threatened injury).

¶70 Following argument on the motion, the circuit court issued a written decision in which it ultimately agreed with Pellegrini and concluded he had standing to pursue the declaratory judgment action. In doing so, the court relied on both *Teigen*'s lead and concurring opinions in concluding that "Wisconsin law grants a statutory right to [elector] standing under WIS. STAT. § 5.06." *See Teigen*, 403

---

[15] WEC also argued before the circuit court that the doctrine of claim preclusion barred Pellegrini from challenging the Delegation Order because he could have asserted a claim challenging it under WIS. STAT. § 227.40 in *Pellegrini I*—rather than simply raising it as an alternative argument as the *Pellegrini I* court concluded he had done—but failed to do so. The *Pellegrini II* court disagreed. Because WEC does not argue that claim preclusion applies on appeal, I do not address it further. *See, e.g.*, *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491-92, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned."). The parties likewise argued as to whether judicial estoppel applied before the circuit court but did not raise that argument before us on appeal, and I will not consider it. *See id.*

Wis. 2d 607, ¶¶20, 34-36 (plurality opinion); *id.*, ¶¶165-66 (Hagedorn J., concurring). It further explained that despite its "murkiness[,]" "*Teigen* is not wholly dissimilar to here as Pellegrini is putting forth allegations that reasonably infer an interference with his right to vote" because the Delegation Order allowed parties other than WEC's commissioners to resolve § 5.06 complaints. Accordingly, the court denied WEC's motion to dismiss.

2. Cross-Motions for Summary Judgment as to WEC's Authority to Delegate WIS. STAT. § 5.06 Resolution

¶71 WEC thereafter filed an Answer in which it admitted to having "delegated authority to decide complaints under WIS. STAT. § 5.06 to WEC's Administrator, or in some cases to its Chairperson" and that it had relied on WIS. ADMIN. CODE § EL 20.04(6) and (10) to do so. It otherwise generally denied both that it lacked the authority to do so and that WEC's commissioners themselves were required to investigate and resolve § 5.06 voter complaints to the exclusion of anyone else. WEC further denied that the Delegation Order was unlawful and that it amounted to an improperly promulgated rule under WIS. STAT. ch. 227.

¶72 Cross-motions for summary judgment ensued. Pellegrini raised multiple arguments in support of his summary judgment motion. First, Pellegrini argued he was entitled to summary judgment because WEC cannot delegate resolution of WIS. STAT. § 5.06 complaints because WEC's *commissioners* are required to resolve such complaints. This is so, he said, because cases such as ***State ex rel. Mayer v. Schuffenhauer***, 213 Wis. 29, 250 N.W. 767 (1933), and ***State ex rel. Ruemmele v. Haugen***, 160 Wis. 494, 152 N.W. 176 (1915), generally establish that when all members of a collective group—such as a commission like WEC—are required to participate in the decision-making process, such responsibilities may not be delegated elsewhere. Moreover, he said, "[t]he ***Haugen*** court … made clear

15

that any internally-delegated commission authority must be confined to 'purely administrative duties' rather than those of a 'judicial nature,'" and he asserts the delegated authority here—resolution of § 5.06 complaints—is at least quasi-judicial in nature and that the Delegation Order is therefore contrary to law. *See Haugen*, 160 Wis. at 500.

¶73 Pellegrini also challenged any notion that either WIS. ADMIN. CODE § EL 20.04(6) or (10) provided authorization for the Delegation Order. Specifically, he asserted these administrative code provisions do not authorize WEC to delegate resolution of WIS. STAT. § 5.06 complaints for two reasons: (1) while § EL 20.04(10) "refers to situations where WEC has delegated its authority," "nowhere does the language of the rule actually authorize a delegation[,]" and consequently, "the source of any such delegation is clearly outside of and separate from the rule"; and (2) when taken as a whole, § EL 20.04 largely addresses "procedural steps for processing" § 5.06 complaints. Pellegrini further asserted that his first point—that the administrative rule's language itself did not authorize any delegation of authority—applied with equal force to EL § 20.04(6).

¶74 Finally, Pellegrini argued that even if the circuit court determined that either WIS. ADMIN. CODE § EL 20.04(6) or (10), or the Delegation Order itself, actually did authorize WEC to delegate the commissioners' responsibilities, § EL 20.04(6) and (10) and the Delegation Order were nevertheless invalid because they conflicted with WIS. STAT. § 5.06's plain language, therefore rendering them "a mere nullity." *See Seider v. O'Connell*, 2000 WI 76, ¶26, 236 Wis. 2d 211, 612 N.W.2d 659 (citation omitted). Thus, he said, WIS. STAT. § 5.05(1e), coupled with § 5.06, makes clear that "WEC may *only* act pursuant to at least a two-thirds majority vote by the Commissioners[,]" thereby rendering any attempt to circumvent that requirement invalid.

16

¶75     While Pellegrini focused his arguments largely on WIS. ADMIN. CODE § EL 20.04(6) and (10) and why those provisions do not authorize WEC to delegate the commissioners' authority to resolve WIS. STAT. § 5.06 complaints, WEC primarily focused its arguments on a purported alternative source of delegation authority altogether—WIS. STAT. § 15.02(4).   According to WEC, § 15.02(4) authorized it to delegate the commissioners' § 5.06 responsibilities via the Delegation Order because § 15.02(4) permits the "[t]he head" of each "independent agency" to "delegate and redelegate to any officer or employee of the … independent agency any function vested by law in the head." *See* § 15.02(4).  WEC said this language applies to the Delegation Order, which it described "as a passive review policy," because: (1) WEC qualifies as a "Commission" as set forth in WIS. STAT. § 15.01(2); (2) WEC is an "independent agency" under § 15.01(9); and (3) resolution of § 5.06 complaints constitutes a "function vested by law in the [Elections Commission]" under § 15.02(4).

¶76     In support of this position, WEC pointed to **Steele v. Gray**, 64 Wis. 2d 422, 219 N.W.2d 312 (1974), *modified on other grounds by* 64 Wis. 2d 422, 223 N.W.2d 614 (1974), in which our supreme court stated that "an officer in whom discretionary power is vested cannot delegate that power without statutory authority to do so[,]" *see **Steele***, 64 Wis. 2d at 430, and WEC asserted that WIS. STAT. § 15.02(4) provides such authority for its delegation of the commissioners' § 5.06 responsibilities here.  WEC also sought to distinguish the cases Pellegrini relied upon by asserting, for example, that **Mayer**, despite concluding that a multi-member body cannot delegate its authority when there is a requirement that they "meet and confer when the act is performed[,]" nevertheless recognized that an exception existed if "the law provides for some exception[,]" which WEC says can be found in § 15.02(4).  *See **Mayer***, 213 Wis. at 33.  WEC also sought to distinguish

17

*Ruemmele*, 160 Wis. 2d 494, which Pellegrini cited for the proposition that WEC could only delegate administrative duties, on the basis that more recent cases such as *Mayer* and *Steele* controlled.

¶77 In regard to WIS. ADMIN. CODE § EL 20.04(10), WEC asserted that that provision itself "is not the source of [its] authority to delegate" resolution of WIS. STAT. § 5.06 complaints and affirmatively stated that it "does not … argue that [§ EL 20.04(10)]" provides such authority. (Formatting altered.) Instead, it argued that that provision "shows that when the Commission has delegated its authority to proceed on and resolve [§] 5.06 complaints through a 'duly adopted motion,'" which it said occurred when WEC implemented the Delegation Order *itself* as "the result of a duly adopted motion[,]" the Administrator was therefore authorized "to proceed on and resolve [§] 5.06 complaints[.]" In other words, according to WEC, WIS. STAT. § 15.02(4) provided it with the authority to delegate the commissioners' § 5.06 responsibilities, and because it did so when it unanimously adopted the Delegation Order, the Administrator was authorized to proceed in accordance with the Delegation Order pursuant to § EL 20.04(10).

¶78 Next, WEC argued it was entitled to summary judgment as to Pellegrini's claims that WIS. ADMIN. CODE § EL 20.04(6) and (10) were invalid. Essentially, WEC asserted that because § EL 20.04(10) itself "is a valid and properly promulgated rule, and the Delegation Order is a product of a duly adopted motion" because at least two-thirds of the commissioners voted in favor of it, "nothing more needs promulgation." Finally, WEC argued that neither the administrative code provisions at issue nor the Delegation Order conflicted with WIS. STAT. § 5.06.

¶79     In response to WEC's argument that WIS. STAT. § 15.02(4) authorized it to delegate resolution of WIS. STAT. § 5.06 complaints—which Pellegrini noted WEC had raised "for the first time" in its summary judgment brief—Pellegrini argued that § 15.02(4) did not control because WIS. STAT. § 5.05(1e) is both the more recently enacted statute and the more specific statute. *See Faber v. Musser*, 207 Wis. 2d 132, 557 N.W.2d 808 (1997); *City of Milwaukee v. Kilgore*, 193 Wis. 2d 168, 532 N.W.2d 690 (1995); *State ex rel. Hensley v. Endicott*, 2001 WI 105, 245 Wis. 2d 607, 629 N.W.2d 686. Pellegrini also asserted that WEC's reliance on *Steele* for the proposition that § 15.02(4) granted delegation authority was misplaced in part because that case "did not apply the part of § 15.02(4) that WEC says applies here[.]" WEC, for its part, disagreed with Pellegrini's contention that §§ 5.05(1e) and 15.02(4) were in conflict at all, and it therefore asserted Pellegrini's argument that the more specific § 5.05(1e) controlled over § 15.02(4) lacked merit.

¶80     The circuit court heard argument at a June 2024 motion hearing and thereafter issued a written decision in September 2024 granting Pellegrini's motion and denying WEC's motion. In that written decision, the court: (1) declared the Delegation Order, with respect to WIS. STAT. § 5.06, was *ultra vires* and therefore unlawful; (2) declared that WIS. ADMIN. CODE § EL 20.04(6) and (10) were invalid and unenforceable to the extent they were inconsistent with the court's decision; and (3) issued an injunction ordering WEC to resolve future § 5.06 complaints in accordance "with the statute by a vote of the commission."

¶81     As to its rationale, the circuit court explained that WIS. STAT. §§ 5.05(1)(e), 5.05(1e), and 5.06 give rise to WEC's statutory authority to resolve § 5.06 complaints and that WIS. STAT. § 15.02(4), despite WEC's contention, simply did not apply. Reading these statutes together, the court determined that

19

WEC could not delegate resolution of § 5.06 complaints because both § 5.05(1)(e)'s directive that WEC could "'[i]ssue an order under [§] 5.06'" and § 5.05(1e)'s requirement that any nonprocedural action WEC undertook required "'the affirmative vote of at least two-thirds of the members'" were "plain and unambiguous[.]" *See* § 5.05(1e). The court likewise concluded that § 5.06 itself is plain and unambiguous.

¶82    Regarding WIS. STAT. § 15.02(4), the circuit court rejected WEC's argument that the need for governor approval applied only to the "'allocat[ion] and reallocat[ion] [of] duties and functions not assigned by law'" and instead concluded that the need for governor approval applied to all of § 15.02(4)'s provisions. *See* § 15.02(4). To that end, the court explained that because "the governor does not approve any reorganization or delegation nor delegated authority to approve changes to WEC[,]" § 15.02(4) did not apply here. The court further elaborated that despite WEC's suggestion to the contrary, it could not "read[] the middle (second) sentence of WIS. STAT. § 15.02(4) in isolation." In light of these conclusions, the court held that because WEC was required to issue orders resolving WIS. STAT. § 5.06 complaints "with an affirmative vote of at least two-thirds members[,]" it could not delegate its authority. WEC appeals.

## II. STANDARD OF REVIEW

¶83    This appeal presents the question of whether the circuit court correctly ruled on the motions for summary judgment and correctly denied WEC's motion to dismiss based on standing.

¶84    "Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Talley v. Mustafa*, 2018 WI 47, ¶12, 381 Wis. 2d 393, 911 N.W.2d 55 (quoting

*Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶11, 369 Wis. 2d 607, 881 N.W.2d 285); *see* WIS. STAT. § 802.08(2). Appellate courts review a grant of summary judgment de novo using the same methodology as the circuit court. *Talley*, 381 Wis. 2d 393, ¶12. Matters of statutory interpretation also present questions of law appellate courts review de novo. *Southwest Airlines Co. v. DOR*, 2021 WI 54, ¶16, 397 Wis. 2d 431, 960 N.W.2d 384.

¶85 In reviewing a motion to dismiss, "we accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom." *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶¶18-19, 356 Wis. 2d 665, 849 N.W.2d 693; *see also* *Friends of the Black River Forest*, 402 Wis. 2d 587, ¶¶10-11. "Whether a complaint states a claim upon which relief can be granted is a question of law" courts review independently, although "we benefit from" the circuit court's discussion. *Data Key Partners*, 356 Wis. 2d 665, ¶17. Likewise, "[w]hether a party has standing is [also] a question of law that we review independently." *City of Mayville v. DOA*, 2021 WI 57, ¶15, 397 Wis. 2d 496, 960 N.W.2d 416 (citing *Marx*, 386 Wis. 2d 122, ¶21).

## III. DISCUSSION

¶86 WEC presents two primary issues for resolution on appeal. First, I must determine whether the circuit court erred when it denied WEC's motion to dismiss based on its conclusion that Pellegrini has standing to pursue the claims set forth in his Complaint. If Pellegrini has standing, I must also determine whether: (1) Wisconsin law authorizes WEC to delegate authority to resolve WIS. STAT. § 5.06 complaints; and (2) whether WIS. ADMIN. CODE § EL 20.04(6) and (10) are invalid.

¶87    The parties' respective arguments on appeal largely track those made before the circuit court and are summarized at length above.  I will add any additional arguments and details as necessary in the sections that follow.  Additionally, in considering the arguments raised, it is important to keep in mind that what this case is ultimately about (a procedural question concerning *who* is authorized to resolve WIS. STAT. § 5.06 complaints) is, in many respects, equally as important as what it is *not* about (review of a § 5.06 complaint).  As will become clear, that distinction informs our analysis and conclusions in this matter.

*A.  The WIS. STAT. § 5.06 Complaint Process.*

¶88    The issues raised on appeal implicate various statutes arising under WIS. STAT. ch. 5 that relate to the WIS. STAT. § 5.06 complaint process.  Before turning to the specific issues presented on appeal, a brief overview of that complaint process will assist the reader's understanding of the issues presented and will aid in analyzing and in resolving these important questions.

¶89    WISCONSIN STAT. § 5.025 defines "commission," as relevant here, as meaning "the elections commission[,]"—WEC—and the legislature has tasked it with administering certain election-related laws, including those set forth in WIS. STAT. ch. 5.  *See* WIS. STAT. §§ 5.05 and 15.61.  Section 5.05, in turn, sets forth WEC's "powers and duties" and says that WEC "shall have the responsibility for" administering ch. 5.  Sec. 5.05(1).  Section 5.05(1)(e) provides that "[p]ursuant to such responsibilit[ies], [WEC] may" "[i]ssue an order under [WIS. STAT. §] 5.06[.]"  Sec. 5.05(1)(e).  When WEC undertakes any nonprocedural action, it must do so by affirmative vote: "Any action by the commission, except an action relating to procedure of the commission, requires the affirmative vote of at least two-thirds of the members."  Sec. 5.05(1e).

22

¶90    One of WEC's statutorily designated responsibilities relates to resolution of WIS. STAT. § 5.06 elector complaints.    Pursuant to § 5.06(1), "[w]henever any elector of a jurisdiction or district served by an election official believes that a decision or action of the official or the failure of the official to act with respect to" various enumerated matters has occurred, "the elector may file a written sworn complaint with [WEC]," and WEC "may conduct a hearing on the matter in the manner prescribed for treatment of contested cases under [WIS. STAT.] ch. 227 if it believes such action to be appropriate."  Sec. 5.06(1).  Section 5.06's ensuing subsections detail how the commission may resolve a complaint.    In particular, § 5.06(6) provides that:

> [WEC] may, after such investigation as it deems appropriate, summarily decide the matter before it and, by order, require any election official to conform his or her conduct to the law, restrain an official from taking any action inconsistent with the law or require an official to correct any action or decision inconsistent with the law.    [WEC] shall immediately transmit a copy of the order to the official.  An order issued under this subsection is effective immediately or at such later time as may be specified in the order.

*Id.*  After rendering a decision, WEC "may withdraw, modify or correct an order issued under sub. (6) within a timely period if it finds such action to be appropriate." Sec. 5.06(7).  Section 5.06 further provides for an appeal process following the disposition of a complaint; those provisions, however, are not directly relevant for our purposes.

¶91    At oral argument, this court specifically questioned the parties as to whether resolution of WIS. STAT. § 5.06 complaints constitutes an "action" subject to WIS. STAT. § 5.05(1e) or whether resolution of such complaints instead qualifies as a "function" for purposes of WIS. STAT. § 15.02(4).  Pellegrini, in response, asserted that § 5.06 sets forth a process that qualifies as an "action" as opposed to a

23

"duty" or "function." Thus, he argues, when WEC adopted the portions of the Delegation Order relevant on appeal, it altered the § 5.06 complaint framework contrary to law by disposing of the requirement set forth in § 5.05(1e) that "[a]ny [nonprocedural] action by the commission" "requires the affirmative vote of at least two-thirds of the members." WEC disagrees and instead asserts that resolution of a § 5.06 complaint is a "function" for the purpose of § 15.02(4). With the above statutes in mind, I turn to the arguments raised on appeal.

*B. Pellegrini Has Standing to Pursue Declaratory Judgment.*

¶92 Before addressing whether WEC impermissibly delegated authority to resolve WIS. STAT. § 5.06 complaints vis-à-vis the Delegation Order and whether the Delegation Order and WIS. ADMIN. CODE § EL 20.04(6) and (10) conflict with § 5.06, I must determine whether the circuit court erred when it concluded Pellegrini has standing to seek declaratory judgment as to the claims raised in his Complaint. Whether Pellegrini has standing, as previously noted, presents a question of law appellate courts review independently. To the extent statutory interpretation is necessary to do so, such questions also present a question of law subject to de novo review.

¶93 After the parties filed their respective appellate briefs, our supreme court issued its opinion in *Brown*, in which it concluded that Brown, who sought judicial review of a WEC decision regarding in-person absentee voting procedures, lacked standing because he had not "been 'aggrieved by an order' issued under [WIS. STAT.] § 5.06(6)." *Brown*, 414 Wis. 2d 601, ¶¶1-4 (quoting § 5.06(8)). In its supplemental brief notifying this court of the *Brown* decision, as well as at oral argument, WEC argued that *Brown* governs the standing issue in this case and that like the complainant in *Brown*, Pellegrini cannot "show that he personally suffered

24

(or will suffer) an actual injury as a result of the Commission's delegation policy[,]" and as a result, WEC believes he lacks standing.[16] WEC also asserts that **Brown** controls to the extent it concluded § 5.06 "does not expressly grant an elector a freestanding right to compel local election officials to comply with the law[,]" **Brown**, 414 Wis. 2d 601, ¶19, and it contends that Pellegrini lacks standing because: (1) he did not suffer an injury to a legally protected interest; and (2) **Teigen** does not support elector standing.[17]

¶94 Pellegrini asserts that **Brown** does not control at all because this matter presents "an action for declaratory judgment brought pursuant to [WIS. STAT.] § 227.40(1), not, as in **Brown**, an appeal of a WEC decision pursuant to [WIS. STAT.] § 5.06(8)[,]" thereby rendering **Brown** distinguishable. This distinction is important, he argues, because a plaintiff in a declaratory judgment action need not identify a harm that has *already* occurred, but rather may "seek a ruling to avoid such harm" from occurring in the first place. Pellegrini also argues that "this action asks whether WEC's use of the Delegation Order to adjudicate the merits of § 5.06 complaints violates the law and seeks a declaration that the WEC Commissioners may not delegate their authority to adjudicate the merits of such complaints to the Administrator and/or Chairperson"—a point he says "is very different from the circumstances in **Brown**" given that this matter does not implicate

---

[16] The parties also had the opportunity to address the applicability of **Brown v. WEC**, 2025 WI 5, 414 Wis. 2d 601, 16 N.W.3d 619, at oral argument.

[17] In its appellate brief, WEC also asserts that the circuit court erred as to standing during the summary judgment stage because "[u]nder the summary judgment legal standard, the first step is to determine if the plaintiff's complaint states a claim for relief." Here, WEC says, "Pellegrini's amended complaint does not show standing," and therefore "the circuit court erred in granting him summary judgment." In effect, WEC appears to be arguing that the court should have reconsidered its prior standing decision. However, this specific argument is largely undeveloped, and I will not address it within the context of our summary judgment review. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (stating that appellate courts may decline to address undeveloped and inadequately briefed issues).

25

§ 5.06(8) at all. Pellegrini further contends that the fact WEC enforced the Delegation Order against him in *Pellegrini I* establishes that he was "denied the process required" under § 5.06 and that such harm will reoccur should he file future § 5.06 complaints.

¶95 *Brown* arguments aside, the parties largely raise the same standing arguments previously set forth above. For the sake of brevity, WEC continues to assert Pellegrini lacks standing because he does not currently have an active WIS. STAT. § 5.06 complaint pending, which it says is necessary to challenge WEC's delegation authority as well as the Delegation Order itself. Pellegrini, to the contrary, asserts that a declaratory judgment action is the appropriate mechanism by which to challenge the Delegation Order and that he has standing pursuant to WIS. STAT. § 227.40 because WEC's continued utilization of the Delegation Order harms his—and other electors'—interest in having WEC, and only WEC, resolve § 5.06 complaints.[18] He further asserts this threatened harm will continue so long as the Delegation Order is in effect, thereby making his claim appropriate to raise in a declaratory judgment action.

¶96 "Standing requirements in Wisconsin are aimed at ensuring that the issues and arguments presented will be carefully developed and zealously argued, as well as informing the court of the consequences of its decision." *McConkey*, 326 Wis. 2d 1, ¶16. "[S]tanding in Wisconsin is not a matter of jurisdiction, but of sound

---

[18] Pellegrini also suggests he is uniquely positioned to assert this claim because the Delegation Order was applied against him in *Pellegrini I* when the Administrator, rather than the WEC commissioners, decided his case, and that it "may very well be" enforced against him "again if he learns of other election law violations and files another complaint." Moreover, given our supreme court's decision in *Brown*, the number of electors who will be able to seek judicial review at all after receiving an adverse decision on a WIS. STAT. § 5.06 complaint is extremely limited, and therefore, Pellegrini presents the best opportunity for a court to decide whether WEC's Delegation Policy violates or complies with the statutes.

judicial policy." ***Id.***, ¶15. To that end, courts construe standing "liberally, and 'even an injury to a trifling interest' may suffice." ***Id.*** (citation omitted).

¶97  In the context of a WIS. STAT. § 227.40 declaratory judgment action, courts apply a two-prong test in determining whether a party has standing.[19] *See **Friends of the Black River Forest***, 402 Wis. 2d 587, ¶18; ***Teigen***, 403 Wis. 2d 607, ¶¶19-29 (plurality opinion). Under the first prong, often referred to as the "injury in fact" prong, courts consider "whether the decision of the agency directly causes injury to the interest of the petitioner[.]" ***Friends of the Black River Forest***, 402 Wis. 2d 587, ¶¶18, 21 (citation omitted). This "injury in fact" prong presents a low bar: "[A]n '[i]njury alleged, which is remote in time or which will only occur as an end result of a sequence of events set in motion by the agency action challenged, can be a sufficiently direct result of the agency's decision to serve as a basis for standing.'" ***Id.***, ¶21 (citation omitted; second alteration in original). Under the second prong, courts consider "whether the interest asserted is recognized by law." ***Id.***, ¶18 (citation omitted). "[W]hether a statute protects, recognizes, or regulates the asserted interest is a purely statutory inquiry, from which the judicially subjective consideration of the 'zone of interests' is properly omitted." ***Id.***, ¶25.

---

[19] Pellegrini brought this declaratory judgment action pursuant to both WIS. STAT. § 227.40, which permits parties to seek "judicial review of the validity of a rule or guidance document" "and/or" WIS. STAT. § 806.04, the general declaratory judgment statute. Secs. 227.40(1) & 806.04. Because we conclude Pellegrini has standing under § 227.40, it is unnecessary to engage in a § 806.04-specific standing analysis in this matter.

While ***Friends of the Black River Forest v. Kohler Company***, 2022 WI 52, 402 Wis. 2d 587, 977 N.W.2d 342, arose in the context of a WIS. STAT. ch. 227 judicial review under WIS. STAT. §§ 227.52 and 227.53, the lead opinion in ***Teigen*** applied this two-prong framework in the context of a declaratory judgment action under WIS. STAT. § 227.40. *See **Teigen v. WEC***, 2022 WI 64, ¶20, 403 Wis. 2d 607, 976 N.W.2d 519 (plurality opinion), *overruled in part by **Priorities USA v. WEC***, 2024 WI 32, 412 Wis. 2d 594, 8 N.W.3d 429. There, ***Teigen*** explained that this two-prong test applies broadly "to challenge an agency action under chapter 227 of the Wisconsin statutes." ***Teigen***, 403 Wis. 2d 607, ¶19 (plurality opinion).

## 1. The "Injury in Fact" Prong

¶98 Pellegrini alleges he stands to suffer an injury as a result of WEC having passed the Delegation Order—specifically, that because WEC delegated resolution of WIS. STAT. § 5.06 complaints, someone other than WEC's commissioners themselves will resolve the complaint in contravention of the process the law requires. Importantly, in the context of a WIS. STAT. § 227.40 declaratory judgment action, an actual injury need not yet have occurred. Rather, the mere threat of injury is sufficient: "The court shall render a declaratory judgment in the action only when it appears from the complaint and the supporting evidence that the rule or guidance document *or its threatened application* interferes with or impairs, *or threatens to interfere with or impair*, the legal rights and privileges of the plaintiff." Sec. 227.40(1) (emphases added). WEC suggests, as described above, that our supreme court's recent ruling in ***Brown*** precludes standing in this case because pursuant to ***Brown***, Pellegrini cannot establish an "injury in fact" under

the first prong of our analysis. I conclude **Brown** is distinguishable and therefore disagree.[20]

¶99 At the outset, it is clear that the standing issue present in **Brown**, which addressed whether a WIS. STAT. § 5.06 complainant who had received an adverse decision could pursue a judicial appeal pursuant to § 5.06(8), was directly related to what occurred *after* the complainant's complaint had already been subjected to the § 5.06 complaint process—it was focused on WEC's decision, the

---

[20] The Lead Opinion suggests **Brown** is a case with virtually the same dispositive legal issues. I disagree. As I have explained at length, the facts and legal issues in this matter are simply not the same as in **Brown**. The standing issue in **Brown** was specifically tied to WIS. STAT. § 5.06(8)—a statute not relevant to standing in this case; **Brown** addressed who had access to *judicial review of a WEC § 5.06 decision*, which is *also* not at issue here. *See **Brown***, 414 Wis. 2d 601, ¶3. Put simply, **Brown** is about *who has access to the courts* pursuant to § 5.06(8) upon receipt of a decision from WEC regarding a § 5.06 complaint; this case is about *the process WEC utilizes in rendering the decision to begin with*. These things are quite different despite the Lead Opinion's insistence otherwise. The Lead Opinion also criticizes my **Brown** analysis. The reality is Pellegrini has waited so long for a final decision on this issue that the sands continue to shift under his feet. Because the wheels of justice turned so slowly here, he did not get judicial review after he received an adverse decision from WEC in the prior matter. While his appeal of that adverse decision was pending in the circuit court, our supreme court issued **Teigen**. Based on **Teigen**, the circuit court in **Pellegrini I** ruled in his favor, but it also refused to address the delegation policy issue Pellegrini raised. Pellegrini subsequently filed this declaratory judgment action for the purpose of addressing this issue and obtained a favorable ruling in the circuit court; however, while WEC's appeal here was pending, our supreme court decided **Brown**, which the Lead Opinion now says controls here. **Brown**, however, was not the law when the circuit court decided this case. Thus, my analysis of **Brown** is accurate and necessary. To the contrary, the Lead Opinion buries its head in the sand and refuses to see the significant difference between **Brown** and this case.

Additionally, although the Lead Opinion tacitly acknowledges that standing in Wisconsin is ultimately a matter of judicial policy and not one of jurisdiction, *see **McConkey***, 326 Wis. 2d 1, ¶¶15-19, it ignores the reality that this is a **McConkey** case with an important legal issue that is ripe and must be decided. The Lead Opinion neither disputes that this matter has been fully briefed nor that the parties have effectively presented their arguments to the courts. It also refuses to acknowledge that ensuring WEC complies with state law as to *how* it resolves WIS. STAT. § 5.06 complaints is a matter of great public importance—particularly following the **Brown** court's conclusion that only a finite number of individuals have access to judicial review at all after receiving WEC's decision on a § 5.06 complaint, making it all the *more* imperative that WEC complies with the law's commands as to its procedures. Instead, the Lead Opinion insists WEC's internal processes and procedures should remain unchecked unless and until a § 5.06 complainant actually obtains an adverse decision from WEC's Administrator, which is, of course, not the standard that applies in a declaratory judgment action in the first place.

29

substantive result. *See **Brown***, 414 Wis. 2d 601, ¶¶3-4. Here, however, I am tasked with addressing WEC's alleged *procedural* violation utilized to resolve § 5.06 complaints—in other words, whether there is a statutory right to a specific *process* in the *resolution of* a § 5.06 complaint, and if so, whether that right was violated. This presents a very different question than that addressed in ***Brown***. ***Brown*** is also distinguishable in that standing in that case was explicitly "governed by WIS. STAT. § 5.06(8)"—a statute not at issue here—and resolution of the standing issue revolved primarily around the court's interpretation of the word "aggrieved" as used in that statute. *See **Brown***, 414 Wis. 2d 601, ¶¶12-13.

¶100 Unlike in ***Brown***, in this case, I am tasked with resolving standing under WIS. STAT. § 227.40(1)—a statute that does not contain the "aggrieved by" requirement our supreme court construed in interpreting WIS. STAT. § 5.06(8) in ***Brown***. Consequently, the ***Brown*** court's conclusion that for the purpose of establishing an injury, what it means to be "aggrieved" by a decision "is to be interpreted consistently across statutes"—which ultimately led to its conclusion that "aggrieved" in the context of § 5.06(8) "mean[s] the same as what it means in other statutes and … that a complainant is 'aggrieved' by WEC's decision when she or he has suffered an injury to a legally recognized interest *as a result of WEC's decision*"—is inapplicable here. *See **Brown***, 414 Wis. 2d 601, ¶¶13, 15 (emphasis added). To that end, any suggestion that I should read ***Brown***'s interpretation of "aggrieved" as it relates to statutes that *do* contain such language into § 227.40(1), which does not use such language, is contrary to our basic principles of statutory construction. *See, e.g.*, ***State v. Fitzgerald***, 2019 WI 69, ¶30, 387 Wis. 2d 384, 929 N.W.2d 165 ("We do not read words into a statute … rather, we interpret the words the legislature actually enacted into law.").

¶101   What *is* important for my purposes in this declaratory judgment action, however, is that in concluding that "to be aggrieved by a decision, one must have suffered an injury to a legally recognized interest as a result of the decision[,]" the ***Brown*** court acknowledged that "to be aggrieved" *includes* a threatened injury—in other words, determining whether a party has been "aggrieved" requires consideration of: "(1) Did the party suffer *a threatened* or actual injury as a result of the decision?  And (2) is that injury recognized by law?" ***Brown***, 414 Wis. 2d 601, ¶¶12-14, 25 (emphasis added).  Thus, the ***Brown*** court indicated that even where being "aggrieved" is statutorily required to support standing, a *threat* of harm is sufficient—no different than a threat of harm being sufficient to establish standing for the purpose of a WIS. STAT. § 227.40 declaratory judgment action, which, as a primary purpose, allows a party to seek redress from the courts *before* any injury even occurs.  *See* § 227.40(1).  Moreover, to the extent the ***Brown*** court stated that "aggrieved" should be "interpreted consistently across statutes[,]" the only reasonable understanding of such a directive is that it applies to those statutes that actually contain the word "aggrieved"—not to statutes such as § 227.40(1) that do not contain any such language.  *See **Brown***, 414 Wis. 2d 601, ¶13.

¶102   Additionally, while Pellegrini draws upon (but does not explicitly rely on) his concern that his prior complaint to WEC was resolved through a process that is unlawful under our statutes to establish standing in the current matter, his concern does not end there.  He also expresses through his Complaint in this case his desire to bring future complaints before WEC and his concern that those, too, will not

31

receive statutorily lawful review by WEC.[21]  Unlike the circumstances in ***Brown***, here, Pellegrini does not challenge the outcome of his prior complaint but rather challenges the purportedly unlawful *process* by which his past complaint—and any future complaints he submits to WEC—was decided.  As WIS. STAT. § 227.40 makes clear, "[a] declaratory judgment may be rendered whether or not the plaintiff has first requested the agency to pass upon the validity of the rule or guidance document in question," and a court "shall render" a declaratory judgment "when it appears from the complaint and the supporting evidence that the rule or guidance document or its threatened application interferes with or impairs, or threatens to interfere with or impair, the legal rights and privileges of the plaintiff."  Sec. 227.40(1).  Certainly here Pellegrini has sufficiently asserted that the Delegation Order and its threatened application "threatens to interfere with or impair" his "right[] and privilege[]" to statutorily lawful review of any future complaint he files.  For all of these reasons, I conclude ***Brown*** is distinguishable and therefore does not control under the first prong of our standing analysis.

¶103   Having determined ***Brown*** is distinguishable, I turn to the following instructive statement from ***Putnam v. Time Warner Cable of Southeastern Wisconsin, Ltd. Partnership***, 2002 WI 108, 255 Wis. 2d 447, 649 N.W.2d 626, a case that addressed standing in the declaratory judgment context (albeit under WIS.

---

[21]  Among other things, Pellegrini states in his Complaint: (1) he "has a legal right for WEC to abide by the statutory process to resolve complaints"; (2) "The Rule interfered with and impaired *and impairs* [his] legal rights and privileges"; (3) he "is entitled to a declaration that the [Delegation Order] is invalid and unenforceable"; and (4) "the Delegation Order interferes with [his] right to file a [future] complaint under [WIS. STAT.] § 5.06 and to have that complaint decided by the WEC Commissioners and not by the Administrator or any person other than the WEC Commissioners." (Emphasis added.)  In his "Request for Relief[,]" he seeks "[a]n injunction requiring WEC to decide *future* § 5.06 complaints by voting on the decision before it is issued[.]"  (Emphasis added.)

STAT. § 806.04).[22]  In ***Putnam***, our supreme court explained that the purpose of a declaratory judgment action "is to allow courts to anticipate and resolve identifiable, certain disputes" prior to a wrong having occurred.  ***Putnam***, 255 Wis. 2d 447, ¶43. Consequently, the court explained, "[b]y definition, the ripeness required for a declaratory judgment [action] is different from the ripeness required in other actions[,]" and "[t]hus, a plaintiff seeking a declaratory judgment need not actually suffer an injury" prior to seeking declaratory relief in advance but rather need only establish "that the facts [are] sufficiently developed to allow a conclusive adjudication."  ***Id.***, ¶44.  To that end, the court reiterated what it had previously recognized in ***Loy v. Bunderson***, 107 Wis. 2d 400, 320 N.W.2d 175 (1982): "[T]he intent, capacity, and power to perform, create justiciability as clearly as the completed act or event, and is generally easily distinguishable from remote, contingent, and uncertain events that may never happen."  ***Putnam***, 255 Wis. 2d 447, ¶46 (quoting ***Loy***, 107 Wis. 2d at 414).[23]

---

[22] Case law regarding standing for WIS. STAT. § 806.04 actions applies here.  *See **State ex rel. Hensley v. Endicott***, 2001 WI 105, ¶20, 245 Wis. 2d 607, 629 N.W.2d 686 (explaining that in context of a declaratory judgment as to the validity of administrative rules, "such actions are typically governed by … § 806.04, which provides the general rules for declaratory relief, and WIS. STAT. § 227.40, which provides the procedures for contesting the validity of administrative rules").

[23] The Lead Opinion relies on ***Putnam***, stating that in ***Putnam***, the alleged future harm was "an imminent and practical certainty."  *See **Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship***, 2002 WI 108, ¶46, 255 Wis. 2d 447, 649 N.W.2d 626; Lead op., ¶22.  It is hard not to question whether the author of the Lead Opinion bothered to read ***Putnam***, which involved a fee for paying a bill late and where the ***Putnam*** plaintiffs sought declaratory judgment in an attempt to prevent the cable company from imposing the late fee in the future.  ***Id.***, ¶4.  The ***Putnam*** court held the declaratory judgment was sufficiently justiciable despite the fact that the plaintiffs had not yet paid the future late fees—and maybe never would.  ***Id.***, ¶¶52-53.  It said making the plaintiffs pay the late fee, then suing to recover the fee, would be "time-consuming, costly, and impractical" and that these plaintiffs could seek declaratory judgment because the purpose of a declaratory judgment action is to "declar[e] … rights" and provide "injunctive relief *for the future*."  ***Id.***, ¶¶50-51 (emphasis added).  ***Putnam*** supports deciding the merits of Pellegrini's claim.

¶104 Here, Pellegrini specifically alleged "a legal right for WEC to abide by" WIS. STAT. § 5.06's "statutory process to resolve complaints" and that WEC's delegation of authority to resolve § 5.06 complaints to someone other than WEC's commissioners interferes with that right to have WEC's commissioners themselves, by a two-thirds vote, resolve § 5.06 complaints. This is indisputably an allegation that WEC undertook an action from which he suffers a personal harm: the threat that he will not be afforded the process to which he is legally entitled in the resolution of a § 5.06 complaint. And, as already noted, while I do not specifically rely on the Delegation Order having been implemented against Pellegrini in *Pellegrini I* given that that matter is not currently before us, it nevertheless bolsters the harm alleged because it confirms that WEC actually has previously implemented its Delegation Policy to resolve § 5.06 complaints—something that WEC itself has also admitted.[24] As I have also previously explained, Pellegrini's allegations here are in stark contrast to those in *Brown* where the court determined Brown had failed to "allege that WEC's decision" concluding no violation of the election laws had occurred in regard to his complaint concerning absentee voting procedures "personally affected him." *See Brown*, 414 Wis. 2d 601, ¶¶6, 16.

¶105 Based on the foregoing, I conclude Pellegrini has satisfied the "injury in fact" prong of our analysis, as the alleged threat of harm is certainly sufficient to fall within the ambit of an injury that "will only occur as an end result of a sequence

---

[24] WEC suggests that the Delegation Order is written broadly as a "passive review" policy, meaning that in regard to any given WIS. STAT. § 5.06 complaint, there is always a "potential [for] intervention by the Commission as a body." In other words, WEC seems to suggest that because the commissioners can effectively "claw back" the delegated authority, we cannot know in advance whether WEC will actually implement the Delegation Order in regard to a specific § 5.06 complaint. Not only is this argument unavailing, it misses the mark entirely because the mere *threat* that WEC will implement a purportedly invalid procedure to resolve a § 5.06 complaint is sufficient to satisfy the alleged harm requirement as set forth by the declaratory judgment principles cited herein.

of events set in motion by the agency action challenged," thereby rendering it "a sufficiently direct result of the agency's decision to serve as a basis for standing." *See Friends of the Black River Forest*, 402 Wis. 2d 587, ¶21 (citation omitted).

2. <u>Whether the Asserted Interest Is Recognized by Law</u>

¶106   Having determined Pellegrini has satisfied the "injury in fact" prong, I must next determine whether the alleged injury—resolution of a WIS. STAT. § 5.06 complaint by someone other than WEC's commissioners themselves—is an injury "'to an interest which the law recognizes or seeks to regulate or protect.'" *See Friends of the Black River Forest*, 402 Wis. 2d 587, ¶23 (citation omitted).  The analysis of whether a legally protectible interest exists "centers on a textually driven analysis of the language of the specific statute cited by the petitioner as the source of its claim to determine whether that statute 'recognizes or seeks to regulate or protect' the interest advanced by the petitioner." *Id.*, ¶28 (quoting *Waste Mgmt. of Wis., Inc. v. DNR*, 144 Wis. 2d 499, 505, 424 N.W.2d 685 (1988)).  This question, for all practical purposes, effectively requires that I determine whether WEC has statutory authority to delegate resolution of § 5.06 complaints.

¶107   Pellegrini maintains that WIS. STAT. §§ 5.025, 5.05(1)(e), 5.05(1e), and 5.06 confirm that WEC cannot delegate resolution of § 5.06 complaints.[25]  According to Pellegrini, when read together, these statutes clearly establish that "the WEC Commissioners [are required] to adjudicate the merits of § 5.06 complaints *as a commission*, pursuant to a two-thirds majority vote."  In asserting these statutes control, he challenges WEC's reliance on WIS. STAT. § 15.02(4) as the source of its

---

[25] Although Pellegrini also argues WIS. ADMIN. CODE § EL 20.04(6) and (10) do not provide delegation authority, I will address those provisions in a later section as addressing them here is ultimately not necessary to resolve whether statutory authority to delegate resolution of WIS. STAT. § 5.06 complaints exists.

delegation authority, as well as WEC's contention that WIS. STAT. § 5.05(3d) confirms it has authority to delegate resolution of § 5.06 complaints, arguing instead that that statute does not apply because it "does nothing more than state that the Commission *may assign* duties to the Administrator[,]" *not* that it "give[s] the Administrator any new authority … [or] … indicate[s] that the *type of authority* WEC has given the Administrator via the Delegation Order may indeed be delegated."[26]  For its part, WEC, in addition to relying on § 15.02(4) and § 5.05(3d), also argues that the circuit court erred in concluding § 15.02(4) requires governor approval for delegation and was therefore inapplicable under the circumstances present here.

¶108  Having considered the parties' arguments and relevant statutory provisions, I conclude the law recognizes and protects Pellegrini's asserted

---

[26] The parties raise additional arguments regarding these statutes and whether they do, or do not, authorize WEC to delegate resolution of WIS. STAT. § 5.06 complaints.  For example, WEC also points to **Steele v. Gray**, 64 Wis. 2d 422, 219 N.W.2d 312 (1974), *modified on other grounds by* 64 Wis. 2d 422, 223 N.W.2d 614 (1974), for the proposition that a statute such as WIS. STAT. § 15.02(4) can provide an exception to the general principle that where discretionary authority is vested in an officer, such authority cannot be delegated.  In **Steele**, our supreme court stated that "an officer in whom discretionary power is vested cannot delegate that power *without statutory authority to do so*."  **Steele**, 64 Wis. 2d at 430 (emphasis added).  WEC says § 15.02(4) provides "statutory authority" to delegate a discretionary power.  Pellegrini, in response, asserts that **Steele** is inapplicable because it construed a different portion of § 15.02(4) than the sentence upon which WEC relies, and he further asserts § 15.02(4) does not apply because it is an older and more general statute and that it gives way to WIS. STAT. §§ 5.025, 5.05(1)(e), 5.05(1e), and 5.06, the more recent and more specific statutes.  *See, e.g.*, **City of Milwaukee v. Kilgore**, 193 Wis. 2d 168, 185, 532 N.W.2d 690 (1995); *see also* 2015 Wis. Act 118, 2007 Wis. Act 1, 1983 Wis. Act 484, and 1971 Wis. Act. 261.  Pellegrini further asserts cases such as **State ex rel. Ruemmele v. Haugen**, 160 Wis. 494, 152 N.W. 176 (1915), and **State ex rel. Mayer v. Schuffenhauer**, 213 Wis. 29, 250 N.W. 767 (1933), confirm that where a multi-member body is required to exercise quasi-judicial authority, which he asserts is the case in regard to resolution of § 5.06 complaints, such authority cannot be delegated and therefore WEC's reliance on **Steele** is misplaced.  I decline to further address these arguments as it is not necessary for resolution of this appeal, which is based on a plain-meaning statutory interpretation of § 5.06.

interest—that is, a process by which WEC's commissioners, and WEC's commissioners alone, are required to resolve WIS. STAT. § 5.06 complaints.

¶109 I begin by noting that in ***Brown***, our supreme court recognized that "the *right to complain to* an administrative agency *about* a potential statutory violation does not automatically entail the right to bring an action *based on that alleged violation in court.*" ***Brown***, 414 Wis. 2d 601, ¶19 (emphases added; citing ***Fox v. DHSS***, 112 Wis. 2d 514, 526, 334 N.W.2d 532 (1983)). ***Brown*** addressed the latter half of that statement; the current matter implicates the former: "the right to complain *to*" WEC—not a court—about a violation of Wisconsin's election laws via a WIS. STAT. § 5.06 complaint. ***Brown***, 414 Wis. 2d 601, ¶19 (emphasis added). Here, whether the law protects Pellegrini's asserted interest requires that I determine if "the right to complain to" WEC about alleged election-law violations requires that WEC's commissioners—and *only* WEC's commissioners, to the exclusion of any other party—resolve § 5.06 complaints. "[W]hether a statute protects, recognizes, or regulates the asserted interest is a purely statutory inquiry[.]" ***Friends of the Black River Forest***, 402 Wis. 2d 587, ¶25. To answer this question, I must engage with the statutory text of multiple statutes, including § 5.06, WIS. STAT. §§ 15.02(4), 5.05(1e), and 5.05(3d), and to do so, I turn to the well-known and oft-repeated statutory interpretation framework set forth in ***State ex. rel. Kalal v. Circuit Court for Dane County***, 2004 WI 58, ¶¶45-46, 271 Wis. 2d 633, 681 N.W.2d 110.

¶110 "As with every statutory interpretation case, we begin with the statutory text." ***State v. Brott***, 2023 WI App 45, ¶12, 409 Wis. 2d 96, 996 N.W.2d 78. When reviewing statutory language, appellate courts "ascertain and apply the plain meaning of the statutes as adopted by the legislature." ***White v. City of Watertown***, 2019 WI 9, ¶10, 385 Wis. 2d 320, 922 N.W.2d 61. "[S]tatutory interpretation 'begins with the language of the statute[,]'" and the "language is given

its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Kalal*, 271 Wis. 2d 633, ¶¶45-46 (citation omitted) ("Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."). "To determine common and approved usage, we consult dictionaries." *Sanders v. State of Wis. Claims Bd.*, 2023 WI 60, ¶14, 408 Wis. 2d 370, 992 N.W.2d 126; *see also State v. McKellips*, 2016 WI 51, ¶32, 369 Wis. 2d 437, 881 N.W.2d 258. "To determine the meaning of legal terms of art, we consult legal dictionaries." *Sanders*, 408 Wis. 2d 370, ¶14.

¶111 A statute is unambiguous if the foregoing interpretative process "'yields a plain, clear statutory meaning[.]'" *Kalal*, 271 Wis. 2d 633, ¶46 (citation omitted). If a statute "is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history." *Id.* "[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." *Id.*, ¶47. "[D]isagreement about the statutory meaning" "is not enough" to render a statute ambiguous. *Id.* Rather, "the test for ambiguity examines the" statutory language "to determine whether 'well-informed persons *should have* become confused,' that is, whether the statutory … language *reasonably* gives rise to different meanings." *Id.* (citation omitted; omission in original).

¶112 WEC contends its authority to delegate resolution of WIS. STAT. § 5.06 complaints derives from WIS. STAT. § 15.02(4), a statute appearing in the statutory chapter governing the "Structure of the Executive Branch." *See* WIS. STAT. ch. 15 (formatting altered). I begin my statutory analysis, however, by first

construing the WIS. STAT. ch. 5 statutes upon which Pellegrini relies in maintaining that WEC cannot delegate resolution of § 5.06 complaints. I do so in light of the principle set forth above that courts are to construe statutory language "in the context in which it is used" and "in relation to the language of surrounding or closely-related statutes[.]" *See Kalal*, 271 Wis. 2d 633, ¶¶45-46.

¶113 At oral argument, Pellegrini maintained that WIS. STAT. § 5.06 sets forth a complaint resolution process subject to WIS. STAT. § 5.05(1e)'s requirement that "[a]ny *action* by the commission, except an action relating to procedure of the commission, requires the affirmative vote of at least two-thirds of the members." *See* § 5.05(1e) (emphasis added). Whether Pellegrini is correct depends primarily upon whether the process identified in § 5.06 constitutes an "action" that is nonprocedural in nature.

¶114 WISCONSIN STAT. ch. 5 does not define "action"; however, "action" is a common, ordinary word, and courts may therefore look to common definitions to construe its meaning. At its core, to take "action" is commonly understood to mean something akin to accomplishing or doing something specific or engaging in particular conduct. Common dictionary definitions support such plain meaning. *See Action*, The Merriam-Webster Dictionary (defining "action" as including "a thing done[,]" "the accomplishment of a thing usually over a period of time, in stages, or with the possibility of repetition[,]" "conduct," and "the manner or method of performing");[27] *Action*, The American Heritage Dictionary of the English Language (defining "action" as including "[t]he state or process of acting or doing[,]" "[s]omething that is done or accomplished[,]" and "[o]rganized activity to

---

[27] *See Action*, The Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/action (last visited Feb. 18, 2026).

accomplish an objective").[28]   When considered in the context of WIS. STAT. § 5.05(1e), this suggests that whenever WEC seeks to undertake or complete a nonprocedural task or objective, it is required to proceed with a vote of all of WEC's commissioners.

¶115   By its plain terms, the WIS. STAT. § 5.06 complaint process clearly contemplates that WEC's commissioners must act in some manner to resolve § 5.06 complaints.   This is clear from the statutory language in § 5.06(2) stating that "*disposition* of the [§ 5.06] complaint *by the commission*" is required before a party may avail himself of legal proceedings, *see* § 5.06(2) (emphases added), particularly when coupled with the context in which the legislature uses the word "action" throughout § 5.06.  *See **Rise, Inc. v. WEC***, 2024 WI App 48, ¶34, 413 Wis. 2d 366, 11 N.W.3d 241 ("When interpreting statutes, we generally presume that, when the same word is used several times in a statute, that word has the same meaning every time it is used.").

¶116   In WIS. STAT. § 5.06(1), for example, the legislature first uses the word "action" to refer to an election official's conduct: It provides that an elector may challenge a "decision or *action of the* [*election*] *official*" and may request that the election official "be *restrained from taking any action* inconsistent with the law or be *required to correct any action*" that does not comply with the law. Sec. 5.06(1) (emphases added).   These uses of the word "action" clearly refer to specific conduct.   In the same subsection, the legislature uses the word "action" to again reflect "conduct," this time directed at WEC's commissioners: Where an elector has filed a § 5.06 complaint, "[t]he commission may *conduct* a hearing … if

---

[28] *See Action*, The American Heritage Dictionary of the English language, https://ahdictionary.com/word/search.html?q=action (last visited Feb. 18, 2026).

it believes *such action* to be appropriate." Sec. 5.06(1) (emphasis added). That the legislature used "action" to describe the process of "conduct[ing] a hearing" confirms that WEC "action" contemplates *WEC's commissioners doing* something. This use of "action" is not limited to § 5.06(1). Rather, it also appears in § 5.06(2) in regard to when a party may avail himself of legal proceedings "to test the validity of any decision, *action or failure to act* on the part of any election official[.]" Sec. 5.06(2) (emphasis added).[29] This use of "action," like the other uses, clearly contemplates some type of affirmative conduct, particularly when immediately buttressed by the opposing phrase "failure to act."

¶117 Perhaps most significantly, WIS. STAT. § 5.06(6) and (7), both of which specifically pertain to the ultimate resolution of a § 5.06 complaint, again use the word "action" as contemplating "engaging in conduct" or "doing something specific." In subsection (6), the legislature instructs WEC's commissioners that they can choose to issue an order requiring an election official to "restrain … from *taking any action* inconsistent with the law." Sec. 5.06(6) (emphasis added). Then, in § 5.06(7), the legislature uses the word "action" specifically in reference to a decision issued under § 5.06(6): "The commission may withdraw, modify or correct an order issued under sub. (6) within a timely period if it finds *such action to be appropriate*." Sec. 5.06(7) (emphasis added). This language in § 5.06(7) is particularly instructive for multiple reasons. First, it tells courts that "withdraw[ing], modify[ing] or correct[ing] an order" are all "action[s.]" Second, it tells courts that because WEC's commissioners must take "action" to "withdraw,

---

[29] In one instance, WIS. STAT. § 5.06(2) uses the word "action" in the context of initiating legal action: "No person who is authorized to file a complaint under sub. (1), other than the attorney general or a district attorney, may *commence an action* or proceeding … without first filing a complaint under sub. (1), nor prior to disposition of the complaint by the commission." *Id.* (emphasis added). It is well understood that the word "action," when used within the context of "commencing an action," refers specifically to a legal proceeding.

41

modify or correct an order issued under sub. (6)"—which is an order that resolves the § 5.06 complaint—WEC's commissioners must comply with WIS. STAT. § 5.05(1e)'s directive that it do so only upon an "affirmative vote of at least two-thirds of the members." *See* §§ 5.05(1e), 5.06(7). Given § 5.06(7)'s confirmation that "withdraw[ing], modify[ing and] correct[ing] an order issued under sub. (6)" are all actions, it necessarily follows that the issuance of a decision under § 5.06(6) *itself* must constitute an "action" within the meaning of § 5.06 as a whole. To reach any other conclusion would be unreasonable.[30] Consequently, the issuance of an order under § 5.06(6)—in other words, the resolution of a § 5.06 complaint—is an action subject to § 5.05(1e)'s voting requirement that *WEC's commissioners* vote, and WEC therefore cannot delegate the ultimate resolution of a § 5.06 complaint.

¶118 Because resolution of WIS. STAT. § 5.06 complaints constitutes an *action* that WEC cannot delegate, I conclude that the portion of WIS. STAT. § 15.02(4) WEC relies upon as the source of its delegation authority, by its plain terms, cannot apply because that statute only grants authority to delegate *functions*.[31] *See* § 15.02(4) (authorizing "[t]he head [to] delegate and redelegate …

---

[30] It would likewise be unreasonable to conclude that resolution of a WIS. STAT. § 5.06 complaint is "an action relating to *procedure of the commission*," which is not subject to the two-thirds voting requirement, as resolving a complaint is clearly discretionary and quasi-judicial in nature. *See* WIS. STAT. § 5.05(1e) (emphasis added).

[31] Based on the conclusion that resolution of WIS. STAT. § 5.06 complaints constitutes an "action," it is unnecessary to specifically define what constitutes a "function" within the meaning of WIS. STAT. § 15.02(4). *See, e.g.*, *Pawlowski v. American Fam. Mut. Ins. Co.*, 2009 WI 105, ¶22, 322 Wis. 2d 21, 777 N.W.2d 67 ("When the legislature chooses to use two different words, we generally … presume that different words have different meanings."); *Quick Charge Kiosk LLC v. Kaul*, 2019 WI App 51, ¶31, 388 Wis. 2d 525, 934 N.W.2d 18, *aff'd*, 2020 WI 54, 392 Wis. 2d 35, 944 N.W.2d 598. I further note that while I conclude, as did the circuit court, that § 15.02(4) does not apply, I do so on alternate grounds and do not address the circuit court's conclusion that § 15.02(4) does not apply because it requires governor approval for delegation.

(continued)

any *function* vested by law in the head" (emphasis added)). And, even if resolution of § 5.06 complaints could somehow be construed as a "function vested by law in [WEC]" for the purpose of § 15.02(4) delegation, the broad delegation authority such construction would purportedly allow for would be in direct conflict with WIS. STAT. § 5.05(1e), the more specific statute explicitly requiring WEC itself to undertake a vote given that resolution of § 5.06 complaints constitutes an action. *See, e.g.*, **Mueller v. Edwards**, 2017 WI App 79, ¶11, 378 Wis. 2d 689, 904 N.W.2d 392 ("It is a long-standing rule of statutory construction that if two or more statutes are in conflict, the more specific statute controls over the general statute."). Thus,

---

I also reject WEC's suggestion that WIS. STAT. § 5.05(3d) supports its position that it has authority to delegate resolution of WIS. STAT. § 5.06 complaints. Section 5.05(3d), which is entitled "ADMINISTRATOR," states in relevant part that "[t]he administrator shall perform such *duties* as the commission assigns to him or her in the administration of [WIS. STAT.] chs. 5 to 10 and 12." (Emphasis added.) By its clear language, § 5.05(3d) refers only to *duties*, which, like functions, cannot be the same as "actions." Moreover, the conspicuous absence of any mention of the Administrator being authorized to perform *actions* WEC may assign lends further support to the conclusion that WEC has no statutory authority to delegate resolution of § 5.06 complaints, particularly to the Administrator, and it also suggests that even if I had agreed with WEC that resolution of § 5.06 complaints constitutes a "function" for the purpose of WIS. STAT. § 15.02(4), it arguably *still* could not have delegated resolution of § 5.06 complaints to the Administrator given that in § 5.05(3d), the legislature has only authorized the Administrator to perform *duties* assigned by WEC.

Additionally, although not dispositive, it is interesting that WEC itself, despite urging us to conclude that the resolution of WIS. STAT. § 5.06 complaints constitutes a "function," appears to recognize that resolution of § 5.06 complaints requires *action*, as it uses the word "action" multiple times in the portion of the Delegation Order Pellegrini challenges on appeal. For example, the Delegation Order states that prior to actually exercising the specifically delegated authority, "the Administrator [must] consult with the Commission Chair to determine whether a special meeting is [to be] conducted before *action* is taken[,]" and specifically in regard to review of § 5.06 complaints, the Delegation Order identifies multiple "*actions* [that] shall be taken" "[p]rior to compliance review orders" as to § 5.06 complaints are issued. (Emphases added.)

43

this general principle of statutory construction not only supports my conclusion; it affirms it.[32]

¶119    In light of the foregoing, the relevant statutory language construed above clearly confirms that the legislature required WEC's commissioners—and only WEC's commissioners to the exclusion of any others—to resolve WIS. STAT. § 5.06 complaints.  And, because only WEC's commissioners may do so, I conclude that Pellegrini's asserted interest—having *WEC's commissioners* resolve § 5.06 complaints—is an interest that is "recognized by law."  *See Friends of the Black River Forest*, 402 Wis. 2d 587, ¶18 (citation omitted).  I am therefore satisfied that pursuant to WIS. STAT. § 227.40, Pellegrini has standing to challenge the validity of the Delegation Order and WIS. ADMIN. CODE § EL 20.04(6) and (10), and the circuit court therefore did not err when it denied WEC's motion to dismiss for lack of standing.  *See Seider*, 236 Wis. 2d 211, ¶22 ("The legislature long has recognized the potential for conflict between statutes and administrative rules, and it has authorized declaratory judgments as a means to test the validity of rules.").  Based on this conclusion, I need not address the parties' arguments pertaining to taxpayer standing.  *See State v. Lickes*, 2021 WI 60, ¶33 n.10, 397 Wis. 2d 586, 960 N.W.2d 855 ("Issues that are not dispositive need not be addressed." (quoted source

---

[32] Cases Pellegrini relies upon, such as *Ruemmele*, 160 Wis. at 500, which construed "the term 'commission' as used in" the relevant statute as meaning all of its members were required to participate as to quasi-judicial roles, and *Mayer*, 213 Wis. at 33, which concluded that responsibilities could not be delegated "[w]here authority to do an act of public nature is given by law to more persons than one, or a majority of them, *if the act is one which requires the exercise of discretion and judgment*, unless the law provides for some exception," further confirm that WEC cannot delegate authority to resolve WIS. STAT. § 5.06 complaints.  (Emphasis added.)  This is so because resolution of § 5.06 complaints is quasi-judicial in nature and WEC's commissioners must vote on the resolution of such complaints, and I am aware of no other exception in the law that indicates otherwise.

omitted)); ***Martinez v. Rullman***, 2023 WI App 30, ¶5, 408 Wis. 2d 503, 922 N.W.2d 853 (stating that appellate courts decide cases on the narrowest possible grounds).

¶120  Further, while I am satisfied Pellegrini has established standing to pursue his WIS. STAT. § 227.40 declaratory judgment action claims, I also address the merits for another reason—in Wisconsin, standing "is not a matter of jurisdiction, but of sound judicial policy." ***McConkey***, 326 Wis. 2d 1, ¶15.  In ***McConkey***, our supreme court decided the merits of a claim even though it could have dismissed McConkey's case on standing because it was "difficult to determine the precise nature of the injury[.]"[33] ***Id.***, ¶17.  It nevertheless acknowledged that, even in the face of this difficulty, McConkey had "at least a trifling interest in his voting rights," and it believed "the unique circumstances of th[e] case render[ed] the merits of McConkey's claim fit for adjudication." ***Id.***, ¶17.  Those circumstances included: (1) "McConkey ha[d] competently framed the issues and zealously argued his case"; (2) "it [was] likely that if his claim were dismissed on standing grounds, another person who could more clearly demonstrate standing would bring an identical suit, raising judicial efficiency concerns"; and (3) "the consequences of [the] decision are sufficiently clear; a different plaintiff would not enhance our understanding of the issues in this case." ***Id.*** ¶18.  And, although ***McConkey*** addressed a constitutional challenge rather than a challenge rooted in a purported failure to comply with statutorily mandated procedural requirements, I, like the ***McConkey*** court, "think it prudent that the citizens of Wisconsin have this important issue … resolved." *See **id.***; *see also **Schill v. Wisconsin Rapids Sch.***

---

[33] Notably, the ***McConkey*** court did so in the context of a constitutional challenge, which requires that the "litigant advancing a constitutional claim must have suffered an *actual injury* to a legally protected interest"—an arguably more stringent requirement than that applicable in a WIS. STAT. § 227.40 declaratory judgment action where the mere *threat* of injury to a legally protected interest is sufficient under the first prong of the standing analysis.  *See **McConkey*** 326 Wis. 2d 1, ¶15.

*Dist.*, 2010 WI 86, ¶38, 327 Wis. 2d 572, 786 N.W.2d 177 ("Wisconsin courts evaluate standing as a matter of judicial policy rather than as a jurisdictional prerequisite.").

¶121  Accordingly, I conclude *McConkey*'s reasoning provides a clear and additional basis for addressing the merits of Pellegrini's claim.  The same principles in *McConkey* are not only present here, making this case "fit for consideration," but provide an even stronger basis for this court to do so.  *See id.*, ¶19.  The primary issues Pellegrini presents on appeal—whether WEC is subject to a statutorily mandated requirement that its commissioners, and only its commissioners, decide the outcome of WIS. STAT. § 5.06 complaints and, if so, whether WEC circumvented that requirement when it delegated authority to resolve § 5.06 complaints— represent matters of significant public importance, and the parties have unquestionably "ensur[ed] that the issues and arguments presented [have been] carefully developed and zealously argued[.]"  *See McConkey*, 326 Wis. 2d 1, ¶16. "[A]s a matter of judicial policy," *id.*, ¶17, the merits of the issue raised on appeal must be resolved, particularly following our supreme court's decision in *Brown* as that case effectively limited the pool of § 5.06 complainants who may ultimately have standing to pursue *judicial* review of an adverse decision in a § 5.06 proceeding challenging the actions of local election officials.  *See Brown*, 414 Wis. 2d 601, ¶26.  The *Brown* court's interpretation of § 5.06(8) has effectively ensured that some § 5.06 decisions will not be subject to judicial review—meaning WEC's decision will be the final say on important matters related to a local election official's actions or inactions in at least some cases—thereby making it all the more

imperative that *WEC's commissioners* rather than its *delegate* render such decisions in the first place.[34]

---

[34] Other cases support reaching the merits of this declaratory judgment case because in Wisconsin, "[t]he preferred view appears to be that declaratory relief is appropriate wherever it will serve a useful purpose." *See Olson v. Town of Cottage Grove*, 2008 WI 51, ¶42, 309 Wis. 2d 365, 749 N.W.2d 211 (alteration in original; quoting *Lister v. Board of Regents of the Univ. Wis. Sys.*, 72 Wis. 2d 282, 307, 240 N.W.2d 610 (1976)) (addressing ripeness in declaratory judgment actions); *see also Carlin Lake Ass'n v. Carlin Club Props., LLC*, 2019 WI App 24, ¶¶36-37, 387 Wis. 2d 640, 929 N.W.2d 228 (same). Deciding whether WEC's Delegation Policy is lawful or unlawful most certainly serves a useful purpose.

Pellegrini tried to obtain an answer to this important question when he had an *active* WIS. STAT. § 5.06 complaint—one that was *adverse* to him. But extremely unusual circumstances resulted in the issue not being addressed in *Pellegrini I*. After actively litigating this for over six years, Pellegrini and the people of this state deserve an answer. The Lead Opinion, however, apparently believes it would be more suitable for Pellegrini (or some other elector) to wait until an election official violates an election law again, then file another complaint with WEC, then obtain an adverse decision under the Delegation Policy, then hope that he or she is an elector complainant that survives *Brown* so that he or she can actually obtain judicial review, and finally, pray that during all of that time, the case does not become moot and the law does not change—again. Regular briefing in this case was complete in February 2025. While waiting for Pellegrini's case to be conferenced, the supreme court decided *Brown*, and both parties submitted supplemental authorities. We heard this case at our August 2025 decision conference, at which point we scheduled oral argument for October 2025. After all of that time, effort, and expense, judicial efficiency and the other *McConkey* factors demand that we decide the merits of this declaratory judgment action, and we should not refuse to decide the merits under these facts and circumstances. If it was so clear to my colleagues that Pellegrini lacked standing and that it was unwilling to even consider, let alone apply, the *McConkey* framework, why was it necessary to waste everyone's time and money, along with our judicial resources, by proceeding with oral argument? Under these circumstances, why did it take nearly a year for this court to issue an opinion that could have been done quickly in a summary order months ago?

In *Olson*, our supreme court held that "a plaintiff seeking declaratory judgment need not actually suffer an injury before availing himself of the [Declaratory Judgment] Act" and that "[w]hat is required is that the facts be sufficiently developed to allow a conclusive adjudication." *Olson*, 309 Wis. 2d 365, ¶43 (citing *Milwaukee Dist. Council 48 v. Milwaukee County*, 2001 WI 65, ¶41, 244 Wis. 2d 333, 627 N.W.2d 866 and *State ex rel. Lynch v. Conta*, 71 Wis. 2d 662, 674, 239 N.W.2d 313 (1976), *superseded by statute/rule as recognized in*, *State ex rel. Newspapers Inc. v. Showers*, 135 Wis. 2d 77, 398 N.W.2d 154 (1987)). The *Olson* court also recognized its prior statement that "the facts [must] be sufficiently developed to avoid courts entangling themselves in abstract disagreements" and elaborated that while "[t]he facts on which the court is asked to make a judgment should not be contingent or uncertain, … not all adjudicatory facts must be resolved as a prerequisite to a declaratory judgment." *Olson*, 309 Wis. 2d 365, ¶43 (first alteration in original; quoting *Miller Brands-Milwaukee, Inc. v. Case*, 162 Wis. 2d 684, 694-95, 470 N.W.2d 290 (1991) (citing *Loy v. Bunderson*, 107 Wis. 2d 400, 412, 414, 320 N.W.2d 175 (1982))).

*C. Because WEC Cannot Delegate Resolution of WIS. STAT. § 5.06 Complaints, WIS. ADMIN. CODE § 20.04(6) and (10) and the Challenged Portions of the Delegation Order Are Invalid to the Extent They Conflict with § 5.06.*

¶122   Having determined that WEC does not have statutory authority to delegate resolution of WIS. STAT. § 5.06 complaints, I am left to address whether WIS. ADMIN. CODE § EL 20.04(6) and (10) and the portions of the Delegation Order Pellegrini challenges conflict with § 5.06 and, if so, whether those provisions are invalid.

¶123   "Resolving an alleged conflict between a statute and an interpretive rule requires statutory interpretation[,]" which presents a question of law.  ***Seider***, 236 Wis. 2d 211, ¶26; *see also* ***Trott v. DHFS***, 2001 WI App 68, ¶4, 242 Wis. 2d 397, 626 N.W.2d 48 ("The interpretation of an administrative rule or regulation, like the interpretation of a statute, is a question of law that we review de novo." (citation omitted)).  "A rule out of harmony with the statute is a mere nullity."  ***Seider***, 236 Wis. 2d 211, ¶26 (citation omitted).

¶124   I have already determined that WIS. STAT. § 5.06 requires WEC's commissioners themselves to resolve elector complaints submitted to it and that it therefore cannot delegate authority to resolve § 5.06 complaints to any other individual.  Construing WIS. ADMIN. CODE § EL 20.04(6) and (10) in light of that conclusion readily establishes that these code provisions are in conflict with § 5.06.

¶125   WISCONSIN ADMIN. CODE ch. EL 20 pertains to the "Complaint Procedure" for WIS. STAT. § 5.06 complaints.[35]  (Formatting altered.)  WISCONSIN ADMIN. CODE § EL 20.04 is entitled "Investigations[,]" and it sets forth various

---

[35]  A note at the beginning of WIS. ADMIN. CODE ch. EL 20 states that "Chapter EL 20 has been superseded by [WIS. STAT. §] 5.05(2m) … and is no longer effective, except for complaints alleging a violation of election laws by a local election official under [WIS. STAT. §] 5.06[.]"

tasks the WEC Administrator is to undertake upon the filing of a § 5.06 complaint. (Formatting altered.) As relevant here, § EL 20.04(6) and (10) provide:

> **(6)** If the complaint meets the standards under sub. (1), as applied to complaints under [WIS. STAT. §] 5.06 … the administrator shall proceed *as the commission authorizes by duly adopted motion and, where no motion is in effect*, the administrator shall proceed after consultation with the commission's chair.
>
> ….
>
> **(10)** After all pleadings are filed under [WIS. STAT. §] 5.06, … the administrator shall proceed *as the commission authorizes by duly adopted motion or, where no motion is in effect*, the administrator shall proceed after consultation with the commission's chair. *Where the commission has delegated to the administrator the authority to resolve complaints*, the administrator shall issue an order making findings and resolving the complaint.

*Id.* (emphases added). Based on their plain language, neither § EL 20.04(6) nor (10) can be read as *authorizing* WEC to delegate resolution of § 5.06 complaints. However, the emphasized language clearly *contemplates* not only the possibility that WEC may seek to pass a "duly adopted motion" in regard to § 5.06 complaints generally, but also that it may specifically pass such a measure affirmatively delegating authority to the Administrator to resolve such complaints. As the analysis above establishes, however, WEC has no authority to delegate resolution of § 5.06 complaints at all, meaning that WEC's commissioners, and only WEC's commissioners, may take any action on such complaints. Consequently, to the extent § EL 20.04(6) and (10) purport to authorize the Administrator to take any action in regard to a § 5.06 complaint not explicitly authorized by § 5.06 itself, those provisions of § EL 20.04(6) and (10) conflict with § 5.06 and are therefore invalid. *See Seider*, 236 Wis. 2d 211, ¶26.

49

¶126 I likewise conclude the portions of the Delegation Order at issue—those that purport to delegate authority to resolve WIS. STAT. § 5.06 complaints to anyone other than the WEC commissioners—conflict with § 5.06 and are therefore invalid. In so concluding, I reject WEC's circular suggestion that the Delegation Order is valid because WEC complied with WIS. STAT. § 5.05(1e) in passing it. Contrary to what WEC appears to believe to be true, it cannot simply pass whatever motion it wishes on the premise that the vote to do so itself complied with § 5.05(1e). Such an interpretation would be impermissibly and unreasonably broad. To the contrary, if WEC wishes to pass a motion or enact an order, it must have authority *as to the subject matter of the motion or order itself* to do so. Here, WEC has no such statutory authority to delegate resolution of § 5.06 complaints, and it cannot seek to circumvent the lack of authority to do so under the guise of having complied with § 5.05(1e) when it authorized what it had no authority to authorize in the first place.

¶127 Based on the foregoing, I conclude the circuit court correctly determined that WIS. ADMIN. Code § EL 20.04(6) and (10), along with the challenged portions of the Delegation Order, are invalid to the extent they conflict with WIS. STAT. § 5.06, and it therefore did not err in granting Pellegrini's summary judgment motion, in denying WEC's summary judgment motion, and in ordering WEC to "decide all future … § 5.06 complaints in compliance with the statute by a vote of the commission."

## IV. CONCLUSION

¶128 The legislature authorized electors to file a WIS. STAT. § 5.06 complaint with WEC if the elector believes a local election official has in some way failed to comply with certain aspects of Wisconsin's election laws. When an elector

files such a complaint, he is entitled to have that complaint resolved in the manner set forth by statute. Because resolution of § 5.06 complaints is, for the reasons set forth herein, subject to WIS. STAT. § 5.05(1e)'s requirement that WEC's commissioners proceed with a two-thirds affirmative vote, WEC cannot delegate its authority to resolve § 5.06 complaints, and both WIS. ADMIN. CODE § EL 20.04(6) and (10) and the challenged portions of the Delegation Order are therefore invalid and unenforceable to the extent they conflict with § 5.06's requirements. Accordingly, I would affirm the circuit court, albeit largely on alternate grounds.

¶129 Because my colleagues disagree, I dissent.